IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: FLONASE ANTITRUST LITIGATION | : : : : : | CIVIL ACTION<br><br>NO. 08-CV-3301 |
| THIS DOCUMENT RELATES TO:<br>Indirect Purchasers Actions | : : : | |

April 15, 2009                                                                                            Anita B. Brody, J.

**MEMORANDUM**

I.  Introduction

On September 3, 2008, Plaintiffs A.F. of L.- A.G.C. Building Trades Welfare Plan ("AFL"), International Association of Bridge, Structural, Ornamental and Reinforcing Ironworkers Local No. 79 Health Fund ("IABORI"), IBEW-NECA Local 505 Health and Welfare Plan ("IBEW"), MC-UA Local 119 Health and Welfare Plan ("UA"), Painters District Council No. 30 Health & Welfare Fund ("Painters"), and Sheet Metal Workers Local 441 Health and Welfare Plan ("Sheet Metal"), collectively "Plaintiffs," filed an amended class action complaint against Defendant SmithKline Beecham Corporation, doing business as GlaxoSmithKline, Inc. ("GSK").  Plaintiffs are all indirect purchasers of the prescription drug Flonase (i.e. they did not purchase the drug for resale) who allege that GSK filed sham citizens petitions with the Food and Drug Administration ("FDA") in order to delay the entry of generic Flonase into the market.  Plaintiffs bring three counts against GSK under numerous states' laws:

1

1) Monopolization, 2) Unfair and Deceptive Practices, and 3) Unjust Enrichment. On October 17, 2008, GSK filed a Motion to Dismiss the amended complaint. That motion will be granted without prejudice because none of the named Plaintiffs have stated a claim under the laws of the states in which they reside or do business.

## II. Background[1]

Under the Federal Food, Drug and Cosmetic Act ("FDCA"), drug manufacturers must receive FDA approval before selling a new drug. A prospective manufacturer of a generic drug must demonstrate to the FDA that the generic version is the "bioequivalent" of the brand name drug before the generic version is approved for sale. In other words, the generic version must contain the same active ingredient(s), dosage form, route of administration, and strength. Once a generic drug enters the market, the price of the name-brand drug and the sales volume typically drop. While the approval of a generic version is pending, "citizens petitions" may be filed with the FDA to express legitimate concerns regarding a product and request that the FDA take, or refrain from taking, administrative action. Because citizens petitions could delay a generic drug's approval,[2] they were often abused by pharmaceutical companies attempting to prolong their monopoly in the market. Plaintiffs contend that in 2004, as the end of GSK's exclusivity period for the drug Flonase approached, GSK filed four successive sham citizens petitions solely to delay generic approval of the drug and with no reasonable basis for objecting to the approval.

---

[1] All facts were considered in the light most favorable to Plaintiffs, the non-moving parties. Additionally, all facts in this section were taken from Plaintiffs' opposition to defendant's motion to dismiss, unless stated otherwise.

[2] In 2007, after the citizens petitions in this case were filed, Congress passed a law that allows the FDA to dismiss citizens petitions summarily in order to prevent pharmaceutical companies from using this process to unlawfully extend their monopolies.

Because of this unlawful behavior, Plaintiffs' ability to purchase lower-priced generic versions of Flonase was delayed and they were denied the benefits of unrestrained competition.

### III. Standard of Review and Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Ballentine v. U.S., 486 F.3d 806, 810 (3d Cir. 2007). Under Federal Rule of Civil Procedure 12(b)(6), a court must grant a motion to dismiss if the plaintiff fails "to state a claim upon which relief can be granted." In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true the well-pleaded allegations of the complaint and draw all reasonable inferences in the plaintiff's favor. Brown v. Card Serv. Ctr., 464 F.3d 450, 452 (3d Cir. 2006). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (internal quotations omitted). Jurisdiction over this action is proper under the Class Action Fairness Act of 2005, which grants district courts original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which ... any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)); Kaufman v. Allstate N.J. Ins. Co., Nos. 08-4911, 08-4912, 08-4913, 2009 WL 779759 at *1 (3d Cir. March 26, 2009).

**IV. Discussion**

In the amended complaint, Plaintiffs assert that GSK's actions denied them (1) the benefits of free and unrestrained competition, and (2) the opportunity to purchase lower-priced generic versions of Flonase. GSK contends that because Plaintiffs do not assert in which state(s) they suffered injury they do not have standing to bring any state law claims, and even if the Court infers that named Plaintiffs have standing to assert claims under the laws of the states in which they reside or have a principal place of business, the entire complaint must be dismissed because the named Plaintiffs have failed to state claims under those laws. Unless at least one named Plaintiff can state a claim for relief under each count Plaintiffs do not have standing to bring claims as part of a putative class action. GSK further contends that even if the named Plaintiffs themselves have standing under the laws of states where they were injured, they do not have standing to assert claims on behalf of putative class members under the laws of states where no named Plaintiff was injured. Plaintiffs respond that the named Plaintiffs have stated claims under the laws of Tennessee, Illinois and Florida, states in which named Plaintiffs suffered injury. Furthermore, Plaintiffs assert that it would be "premature to rule on defendant's argument that named Plaintiffs cannot state antitrust claims in jurisdictions where they do not reside or do business" because class certification should be decided prior to analyzing standing. (Plaintiffs' Opposition to Motion to Dismiss, p. 10). Plaintiffs request that should the Court decide GSK's Motion is timely, that the Plaintiffs be allowed to amend their complaint or, alternatively, that the Court dismiss any claims for lack of standing without prejudice so that named Plaintiffs from additional states could join the case.

Article III of the Constitution limits the power of federal courts to resolving cases or controversies. The case or controversy requirement is met when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (citations omitted). The doctrine of standing helps identify which disputes are justiciable under the case or controversy requirement. At a minimum, there are three elements needed to establish constitutional standing under Article III: 1) injury-in-fact, 2) causation (or traceability), and 3) redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).

The Supreme Court has held that in some situations it is appropriate for a court to decide whether or not to certify a class before addressing Article III standing. See Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999) (holding that class certification may be decided first if that issue is "logically antecedent" to Article III concerns). It is unchallenged, however, that "to be a class representative on a particular claim, the plaintiff himself must have a cause of action on that claim." Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1169 (3d Cir. 1987). The Zimmerman court held that the district court did not err in dismissing plaintiff's claim for failure to state a claim before considering class certification, even though the plaintiff argued that other class members might be able to make the necessary allegations needed to state a claim:

> The claims of the representative party must be typical of the claims of the class. Fed.R.Civ.P. 23(a). Adequacy of representation must be established before an action may proceed on behalf of a class. Id. Therefore we find no abuse of discretion in the district court's refusal to consider certification of a class before determining whether the named plaintiff, and *a fortiori* any putative class which the named plaintiff might properly seek to represent, had a federal cause of action.

Id.

Even if class certification is "logically antecedent" to analyzing Plaintiffs' standing to bring claims under the laws of states where the named Plaintiffs did not suffer injury, it is still appropriate to analyze whether a named plaintiff has a cause of action under each claim before deciding whether to certify a class. It would not be premature, therefore, to first determine if Plaintiffs have stated a claim under the laws of jurisdictions where they reside or do business, because at least one named Plaintiff must have a cause of action on a claim for that claim to survive a motion to dismiss.

A. State Law Governing Plaintiffs' Claims

In Illinois Brick Co. v. Illinois, the Supreme Court determined that indirect purchasers do not have standing to bring a cause of action under the federal antitrust statute. 431 U.S. 720 (1977). Illinois Brick, however, does not preempt state law and states may provide antitrust remedies to indirect purchasers under their own law. California v. ARC America Corp., 490 U.S. 93 (1989). Some states follow the logic of Illinois Brick and bar indirect purchasers from bringing antitrust claims. See William H. Page, The Limits Of State Indirect Purchaser Suits: Class Certification in the Shadow of Illinois Brick, 67 Antitrust L.J. 1, note 7 (1999) (citing cases from Texas, Colorado, Washington, Louisiana, Iowa, Kentucky, Connecticut, Arizona, Massachusetts, Florida, Oklahoma, and New Hampshire holding that indirect purchasers do not have standing to bring antitrust claims). Conversely, many states have authorized antitrust suits by indirect purchasers. See Comes v. Microsoft Corp., 646 N.W.2d 440 (Iowa Dist. Ct. 2002) (stating that nineteen states, the District of Columbia, and Puerto Rico have statutes authorizing indirect purchasers to bring an antitrust suit). To further complicate the issue, some states that do not allow indirect purchasers to bring antitrust claims allow them to bring suit under state

consumer protection laws or unfair trade practices statutes. Ciardi v. F. Hoffman-La Roche, Ltd., 436 Mass. 53 (2002); Minuteman, LLC v. Microsoft Corp., 147 N.H. 634 (N.H. 2002); Mack v. Briston Myers Squibb Co., 673 So.2d 100 (Fla. App. 1996).

State laws clearly conflict over whether indirect purchasers can bring antitrust claims. Furthermore, the Supreme Court has held that it is unconstitutional to apply one state's laws over a nationwide class action, even if the class were to be certified, if that state does not have "significant contact or significant aggregation of contacts" to the claims asserted by the class members. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821 (1985). The Plaintiffs have alleged injury, but have not tied this injury to any particular state(s). At this stage, I will infer that each named Plaintiff can establish enough contacts in the state where they reside or have a principal place of business to allege injury under that state's law. In other words, I will infer that the named Plaintiffs have alleged particularized and personal injury under the laws of the states where they have a principal place of business.

There are six named Plaintiffs in this action. IBEW, AFL, UA, and Sheet Metal are welfare funds with principal places of business in Alabama. Painters is an employee welfare benefit plan located in Illinois. IABORI is a welfare fund administered in Tennessee. Plaintiffs contend that they have stated a claim on Count I (Monopolization under State Law) under Tennessee law and that they have stated a claim on Count II (Unfair and Deceptive Trade Practices Under State Law) under Illinois law and Florida law. Although Plaintiffs do not bring any claims under Alabama law, they contend in their Opposition to Defendant's Motion to Dismiss that the Plaintiffs who have principal places of business in Alabama traveled to Florida and made purchases there.

B.  Count I: Monopolization Under State Law

**i. Claims under Tennessee Law**

The complaint alleges that GSK violated the Tennessee Trade Practices Act ("TTPA"), Tenn. Code. Ann §§ 47-25-101, *et seq.*, with respect to purchases of Flonase in Tennessee. GSK responds that Plaintiffs have not stated a claim under Tennessee law because the TTPA only prohibits antitrust conspiracies and because Plaintiffs have not alleged any nexus between the alleged antitrust violation and intrastate commerce.

"Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record." Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007).  The Third Circuit has also held that in deciding a motion to dismiss courts can consider documents "integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted); see Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may also consider undisputable authentic documents on which the plaintiffs have based their complaint).

Plaintiffs concede that the TTPA has a "plurality requirement" and does not cover unilateral monopolization claims. (Plaintiff's Opposition to Motion to Dismiss pp. 30-31). Plaintiffs allege that they satisfy this pleading requirement by listing numerous individuals possessing discoverable information in their initial disclosures under Federal Rule of Civil Procedure 26 and because in GSK's Motion to Bifurcate Discovery GSK claimed that two law firms filed petitions on behalf of an "unidentified client."  In essence, Plaintiffs claim, and ask the Court to infer from the above documents, that GSK conspired with one or more law firms in

8

filing the alleged sham petitions.  The Plaintiffs point to no allegations in the complaint, however, indicating that GSK acted in concert with any law firms or other parties.  Even if this court could consider the Rule 26 disclosures in a Motion to Dismiss as authentic documents, these are not documents on which the Plaintiffs have based their complaint, nor does listing individuals with discoverable information indicate that GSK acted in concert with another party in an alleged monopoly.  Nor can Plaintiffs rely on GSK's Motion to Bifurcate discovery to satisfy this pleading requirement under the TTPA.  At this stage the Court will interpret all facts in Plaintiffs' favor, however, for this claim to survive a motion to dismiss, the Plaintiffs must at least include allegations in their complaint that, if true, would satisfy the elements of a cause of action under the TTPA.  As the Supreme Court said, "[a]s the case comes to us, we must assume that the [plaintiff] can prove the facts alleged in its amended complaint. It is not, however, proper to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State, 459 U.S. 519, 526 (1983). Because Plaintiffs' complaint did not allege that GSK acted in concert with any other party, Plaintiffs have failed to state a claim of monopolization against GSK under the TTPA.

Even if Plaintiffs' complaint had sufficiently alleged that GSK acted in concert with another party, they failed to allege that the anticompetitive conduct had a substantial effect on Tennessee commerce, as required under the TTPA.  Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 524 (Tenn. 2005).  All claims against GSK under the TTPA are dismissed without prejudice to amend.

C.  Count II: Unfair and Deceptive Trade Practices Under State Law

**i. Claims under Illinois Law**

Plaintiffs assert a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ILCFA").  Defendant responds that this claim is essentially an antitrust claim under the guise of a consumer protection claim, and that Illinois law bars indirect purchasers from bringing antitrust claims.  Defendants further assert that Plaintiffs have not stated a claim under the ILCFA because they have not alleged deceptive practices, as required by the statute, nor have they alleged that the conduct occurred primarily and substantially in Illinois.  The ILCFA prohibits:

> [u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of any trade or commerce ... whether [or not] any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2

Under Illinois law, classic antitrust claims, such as price-fixing allegations, cannot be brought under the ILCFA.  See Laughlin v. Evanston Hosp., 550 N.E. 2d 986 (Ill. 1990) (holding that the Consumer Fraud Act is limited to conduct that defrauds or deceives consumers or others and that "[t]o construe the Consumer Fraud Act to give a cause of action for discriminatory pricing that the legislature refused to give under the Antitrust Act would be incongruous."); Gaebler v. N.M. Potash Corp., 676 N.E.2d 228 (Ill. App. Ct. 1997) (holding that allegations that defendants conspired to 'fix,' 'maintain,' or 'stabilize' prices are classic examples of price-fixing and must be

brought under the Antitrust Act and not the Consumer Fraud Act).  Furthermore, under Illinois law, indirect purchasers cannot bring a claim under the Antitrust Act.  Gaebler, 676 N.E.2d at 230 (citing 740 ILCS 10/7(2)).

While Illinois Brick does not preempt state antitrust law, some states, including Illinois, have followed the Supreme Court's lead in denying indirect purchasers standing to bring antitrust claims.  Because indirect purchasers do not have standing to bring antitrust claims, these jurisdictions have further established that indirect purchasers cannot bring state consumer-protection claims based on allegations of antitrust violations.  For example, the Supreme Court of Ohio held that:

> The defendants' attempt to control the supply and to charge excessive prices for the prescription drugs is typical anticompetitive conduct, for which a remedy is provided in the antitrust statutes. . . . Thus, a complaint that alleges a violation of the Ohio Consumer Sales Practices Act predicated upon monopolistic pricing practices does not state a claim upon which relief can be granted because the Valentine Act, not the CSPA, provides the exclusive remedy for engaging in such conduct . . . . [A]n indirect purchaser of goods may not file a Valentine Act claim for violations of Ohio antitrust law.

Johnson v. Microsoft Corp., 834 N.E.2d 791, 801 (Ohio 2005); see also Blewett v. Abbott Labs., 938 P.2d 842, 846 (Wash. Ct. App. 1997) (holding in a case alleging that drug manufacturers conspired to overcharge for drugs that indirect purchasers lack standing to sue under Washington state antitrust law and that an unfair trade practices claim is the "same claim with a different label."); Vacco v. Microsoft Corp., 793 A.2d 1048 (Conn. 2002) (holding that indirect purchasers lacked standing to sue under Connecticut antitrust law and could not recover under the Connecticut Unfair Trade Practices Act for the same anticompetitive conduct); Abbott Labs., Inc.

v. Segura 907 S.W.2d 503, 505-6 (Tex. 1995) (holding that indirect purchaser intervenors could not seek damages under the Deceptive Trade Practices-Consumer Protection Act because "[a]llowing the intervenors to sue under the DTPA on allegations that are virtually identical to the antitrust allegations made by both the Texas Attorney General and the multi-district litigation plaintiffs in Florida would essentially permit an end run around the policies allowing only direct purchasers to recover under the Antitrust Act.).  Even in Tennessee, where indirect purchasers are able to bring antitrust claims under the Tennessee Trade Practice Act, plaintiffs cannot bring claims based on anticompetitive conduct under the Tennessee Consumer Protection Act. Sherwood v. Microsoft Corp., No. M2000-01850-COA-R9-CV  2003 Tenn. App Lexis 539, at *110 (Tenn. Ct. App. July 31, 2003) ("[a]ccordingly, we must presume that the legislature intended that antitrust actions, those involving harm to competition, continue to be brought under the existing antitrust statute, the TTPA [Tennessee Trade Practice Act].  Consequently, we conclude that claims based upon anticompetitive conduct are not cognizable under the TCPA [Tennessee Consumer Protection Act]. Plaintiffs' TCPA claims based on allegations of anticompetitive conduct must be dismissed.")

      Plaintiffs acknowledge that GSK's alleged wrongdoing in this case was motivated by desire to preserve a monopoly and that the result of this alleged illegal behavior was higher prices for the indirect purchasers.  Plaintiffs claim that GSK filed sham petitions to "unlawfully extend the company's monopoly," "den[y] plaintiffs the benefits of free and unrestrained competition," "den[y] plaintiffs the opportunity to purchase lower-priced . . . generic versions of Flonase, and thus force[] Plaintiff and members of the Class to pay supra-competitive prices for fluticasone propionate." Complaint ¶¶ 64-66.  All of Plaintiffs claims allege anticompetitive, monopolistic

behavior resulting in illegal overcharging for a drug.  Plaintiffs themselves cite a case in which the court stated that "the prototypical example of antitrust injury is an allegation by consumers that they have had to pay higher prices . . . as a result of defendant's anticompetitive conduct." Mathias v. Daily News, L.P., 152 F.Supp. 2d 465, 478 (S.D.N.Y. 2001).  Plaintiffs contend that their claims are not inconsistent with the Illinois Antitrust Act (under which indirect purchasers do not have standing) because that Act also prohibits the monopolization alleged here. (Plaintiffs Opposition to Motion to Dismiss, p. 15).  The Illinois Court of Appeals (pursuant to the Supreme Court of Illinois' holding in Laughlin) has held that claims that are covered by the Antitrust Act "must be brought under the Antitrust Act and not the Consumer Fraud [and Deceptive Business Practices] Act."  Gaebler, 676 N.E.2d at 230 (Ill. App. Ct. 1997).  Plaintiffs do not state how their allegations are different from classic antitrust allegations that are covered by the Antitrust Act and cannot be brought under ILCFA, therefore, Plaintiffs' claim under the ILCFA is dismissed without prejudice to amend the complaint.

### ii.  Claims under Florida Law

Plaintiffs assert that the Alabama Plaintiffs' claims are not defeated simply because Plaintiffs do not allege any claims under Alabama law.  The Alabama Plaintiffs are welfare funds with principal places of business in Alabama.  Plaintiffs assert, however, that the Alabama Plaintiffs can bring claims under Florida's consumer protection statute because they "are journeymen who purchased Flonase in various states, including Florida."  (Plaintiffs Opposition to Motion to Dismiss, p. 18).  Plaintiffs concede that they cannot bring claims under Florida's antitrust statute (Plaintiffs Opposition to Motion to Dismiss, p. 20).  Plaintiffs do not, however,

point to any instance in the complaint where they stated, or inferred, that the Alabama Plaintiffs had purchased Flonase in Florida.

As cited above, in a 12(b)(6) motion to dismiss, a court can consider the complaint, attached exhibits, public records and authentic documents relief on in the complaint.  In Burlington Coat Factory, the Third Circuit said:

> As far as we can see, the only source of information before the district court that could have provided a basis for the conclusion it reached was defendants' brief in support of their motion to dismiss. Indeed, the district court's opinion specifically cites to an affidavit proffered by defendants on this point. [Citation omitted]. However, since the district court was ruling on a motion to dismiss, it was not permitted to go beyond the facts alleged in the Complaint and the documents on which the claims made therein were based.

114 F.3d at 1424-25.

Not only do the Plaintiffs cite no instance in their complaint in which they alleged that the Alabama Plaintiffs purchased Flonase in Florida, but they cite no law stating that this Court can consider allegations only mentioned in a party's memorandum of law.  Because no named Plaintiff has alleged injury in Florida or sufficient contact with Florida, the named Plaintiffs have not stated a claim under Florida's consumer protection statute.  The claim brought under Florida's consumer protection statute is dismissed without prejudice.

C. Count III: Unjust Enrichment

Plaintiffs contend that they are bringing an unjust enrichment claim under state common law, and because the elements of an unjust enrichment claim are materially the same nationwide, they do not need to specify under which states' laws they bring this claim.  Defendants respond that the Court cannot proceed without knowing which states' laws to apply, and therefore should

dismiss this claim. Because states analyze unjust enrichment claims differently[3], I will allow Plaintiffs to amend their complaint to state the laws under which they are bringing an unjust enrichment claim.

**V. Conclusion**

Named Plaintiffs cannot establish standing merely by relying on claims of putative class members and must establish their own standing to assert each claim. Zimmerman, 834 F.2d at 1169. In order to have standing, the named Plaintiffs must allege personal and particularized injury. In the case at hand, I inferred that the named Plaintiffs alleged injury in the states where they reside or have a principal place of business. Because none of the named Plaintiffs in this action have sufficiently stated a claim under the laws of the states where they reside or do business, the entire complaint is dismissed without prejudice.

---

[3] For example, the Supreme Court of Tennessee held that to maintain an unjust enrichment claim under Tennessee law, the plaintiffs must provide more than a bare assertion that attempting to exhaust their remedies against the party with whom they are in privity would be futile (in the case at hand this would be the direct purchasers). Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525-26 (Tenn. 2005).