# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                              |   |                  |
|------------------------------|---|------------------|
|                              | : |                  |
| In re: FLONASE ANTITRUST     | : | CIVIL ACTION     |
| LITIGATION,                  | : |                  |
|                              | : | NO. 08-CV-3301   |
|                              | : |                  |
|                              | : |                  |
| THIS DOCUMENT RELATES TO:    | : |                  |
| Indirect Purchaser Actions   | : |                  |

**January _21__, 2010**                                    **Anita B. Brody, J.**

## <u>MEMORANDUM</u>

## I. INTRODUCTION

On May 21, 2009, Plaintiffs A.F. of L.- A.G.C. Building Trades Welfare Plan ("AFL"),

International Association of Bridge, Structural, Ornamental and Reinforcing Ironworkers Local

No. 79 Health Fund ("IABORI"), IBEW-NECA Local 505 Health and Welfare Plan ("IBEW"),

Painters District Council No. 30 Health & Welfare Fund ("Painters"), Sheet Metal Workers

Local 441 Health and Welfare Plan ("Sheet Metal"), and Andrea Kehoe ("Kehoe"), collectively

"Plaintiffs," filed a corrected second amended class action complaint ("SAC") against Defendant

SmithKline Beecham Corporation, doing business as GlaxoSmithKline, Inc. ("GSK").

Plaintiffs are indirect purchasers of the prescription drug Flonase. They allege that GSK

filed sham citizen petitions with the Food and Drug Administration ("FDA") to delay the entry of

a generic version of Flonase (fluticasone propionate)[1] into the market. Plaintiffs bring claims

---

[1] Fluticasone propionate/Flonase is a drug, generally in the form of a nasal spray, used to treat asthma and allergies.

against GSK under several states' laws: (1) Monopolization under the law of Arizona, Iowa, North Carolina, and Wisconsin; (2) Unfair and Deceptive Trade Practices under the law of Arizona, Florida, Illinois, Iowa, Massachusetts and North Carolina; and (3) Unjust Enrichment under the law of Arizona, Florida, Illinois, Iowa, Massachusetts, North Carolina, and Wisconsin. Plaintiffs maintain that they sustained injury when they "purchased and/or provided reimbursement for Flonase purchases" in the respective states. (Compl. ¶¶ 5-9.) On June 19, 2009, GSK filed a Motion to Dismiss the second amended complaint.

## II. BACKGROUND[2]

Under the Federal Food, Drug and Cosmetic Act ("FDCA"), drug manufacturers must receive FDA approval before selling a new drug. The manufacturer of a new drug who obtains FDA approval enjoys a period of market exclusivity during which their patent is protected. Once this period expires, other ("generic") manufacturers may market and sell the drug. Before the generic version is approved for sale, a prospective manufacturer of a generic drug must file an Abbreviated New Drug Application ("ANDA") with the FDA. The manufacturer must demonstrate to the FDA that the generic version is the "bioequivalent" of the brand name drug; in other words, the generic version must contain the same active ingredient(s), dosage form, route of administration, and strength. Once a generic drug enters the market, the price and sales volume of the name-brand drug typically drop. While the approval of a generic version is pending, "citizen petitions" may be filed with the FDA to express legitimate concerns regarding a product and to request that the FDA take, or refrain from taking, administrative action. Because citizen

---

[2] All facts were considered in the light most favorable to Plaintiffs, the non-moving parties.

petitions can delay a generic drug's approval, they are open to abuse by pharmaceutical companies attempting to prolong their monopoly in the market.[3]

Plaintiffs contend that in 2004, as the end of GSK's exclusivity period for Flonase approached, GSK filed four successive sham citizen petitions solely to delay the FDA's approval of generic versions of the drug, and with no reasonable basis for objecting to the approval. Plaintiffs allege that because of this unlawful behavior, their ability to purchase lower-priced generic versions of Flonase was delayed and they were denied the benefits of unrestrained competition.

## III. JURISDICTION

Jurisdiction over this action is proper under the Class Action Fairness Act of 2005, which grants district courts original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2); *See Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 148 (3d Cir. 2009).

## IV. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."

---

[3] In 2007, after the citizen petitions in this case were filed, Congress passed a law that allows the FDA to dismiss citizen petitions summarily in order to prevent pharmaceutical companies from using this process to unlawfully extend their monopolies.

*Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Pursuant to Rule 12(b)(1), "the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Id.* On a motion to dismiss for lack of standing, "the plaintiff bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (internal quotations omitted). However, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Under Federal Rule of Civil Procedure 12(b)(6), a court must grant a motion to dismiss if the plaintiff fails "to state a claim upon which relief can be granted." In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true the well-pleaded allegations of the complaint and draw all reasonable inferences in the plaintiff's favor. *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 452 (3d Cir. 2006). While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations omitted).

## V. DISCUSSION

### A. Standing under 12(b)(1): The named plaintiffs have standing in states where they are located or where they purchased Flonase or reimbursed for purchases of Flonase

Article III of the Constitution requires that a plaintiff has standing to assert his or her claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In a class action, "[t]he initial inquiry . . . is whether the lead plaintiff individually has standing." *Winer Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007). *See also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). The issue before me is whether the named plaintiffs in the present action have standing in the states where they make their claims. I find that they do.[4]

---

[4] In *Zimmerman v. HBO Affiliate Group*, the court stated that "to be a class representative on a particular claim, the plaintiff himself must have a cause of action on that claim." 834 F.2d 1163, 1169 (3d Cir. 1987). Named plaintiffs may generally represent other plaintiffs with common but not identical claims; however, courts are split on whether at least one named plaintiff must have suffered injury *in each state* whose laws it attempts to invoke. *Compare Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim"), *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) (following *Dugger* and dismissing claims arising under laws of states in which no named plaintiffs suffered an injury), *and In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152, 156-57 (E.D. Pa. 2009) (stating that "standing is analyzed on a claim by claim basis" and dismissing claims in states where named plaintiffs suffered no injury), *with In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 268-69 (D. Mass. 2004) (deferring the standing determination with respect to states where no named plaintiffs suffered injury, disagreeing with *In re Terazosin* and favoring a more "nuanced approach" to standing in class actions); *and Mowbray v. Waste Mgmt. Holdings, Inc.*, 189 F.R.D. 194, 202 (D. Mass. 1999) (holding that a single named plaintiff with a contract claim arising under Illinois law could represent class members with similar claims arising under laws of many other states). Because I hold that at least one named plaintiff has standing in each state where a claim is stated, the issue of whether plaintiffs may bring claims under laws of states where no named plaintiff suffered an injury is not relevant in this case.

At a minimum, constitutional standing requires three elements: (1) injury-in-fact, which is an invasion of a legally protected interest that is concrete and particularized, and actual or imminent; (2) causation; and (3) likelihood that the injury will be redressed by a favorable decision. *Winer*, 503 F.3d at 325; *Lujan*, 504 U.S. at 560-61.

Plaintiffs' allegations meet the requirements of constitutional standing. They have experienced an injury—paying too much for Flonase—in states where they are located, in states where they purchased Flonase and in states where they reimbursed members for purchases of Flonase. Defendant allegedly caused this injury by wrongfully filing citizen petitions, and thereby unfairly extending its monopoly on the market by preventing the entry of generic versions of Flonase. The injury is likely to be redressed by a favorable court decision. Therefore, each named plaintiff has standing to bring a claim under the laws of the states where they are located, and where they purchased Flonase or reimbursed their members for Flonase purchases.

Case law supports the position that Plaintiffs suffered injury and have standing in states where they purchased a drug or reimbursed their members for purchases of a drug. *See In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 156-57 (E.D. Pa. 2009) (McLaughlin, J) (holding that indirect purchaser plaintiffs had standing to bring claims under the laws of states where their *members* resided, and stating that "[r]eimbursement for the purchase of drugs . . . constitutes a monetary injury to the plaintiffs" and "the plaintiffs' claims have clear connection to the

states where the plaintiffs themselves are located and the states where their members made purchases."); *Ferrell v. Wyeth-Ayerst Labs, Inc.*, No. C-1-01-447, 2004 U.S. Dist. LEXIS 15127, at *13 (S.D. Ohio, June 30, 2004) (holding that indirect purchaser funds had standing in states where the funds paid or co-paid for [i.e. where their members purchased] the drug Premarin); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1370-71 (S.D. Fla. 2001) (dismissing the plaintiffs' claims based on standing only in states where the plaintiffs *neither resided nor purchased* the drug terazosin).

In other cases, the judges—and the defendants—have simply assumed that plaintiffs possessed standing where they made purchases. *E.g.*, *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 267-69 (D. Mass. 2004) ("Smithkline did not challenge the representatives' standing to assert personal claims under the laws of states in which they resided or purchased medication"); *In re Buspirone Antitrust Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002). In both cases, the judges refused to dismiss claims even in states where named plaintiffs neither resided nor purchased the drug. *In re Relafen,* 221 F.R.D. at 267-68; *In re Buspirone*, 185 F. Supp. 2d at 377. The courts deferred the standing decision regarding such states until the class certification stage, relying in part on the Supreme Court's decision in *Ortiz v. Fireboard Corp.*, 527 U.S. 815 (1999).

Defendant fails to cite any cases that specifically deny indirect purchaser plaintiffs standing in states where they purchased a drug. Defendant cites *In re OSB Antitrust Litig.*, Master File No. 06-826, 2007 WL 2253425 (E.D. Pa., Aug.

3, 2007), which simply held that plaintiffs did not have standing where class representatives failed to allege *any particular injury* in specified states, and the states' laws required at least some part of the injury to have occurred in their state. *Id.* at *15-16. In contrast, here the Plaintiffs have alleged injury in each of the relevant states through purchase and/or reimbursement. *See also In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (dismissing claims in 24 states because plaintiffs bore the burden of demonstrating standing and had not done so, where plaintiffs failed to assert that they had standing in states where they did not reside and instead merely argued that the standing determination should be deferred).

Furthermore, there is no reason to defer the standing determination until after class certification. The Supreme Court, in *Ortiz v. Fireboard Corp.*, 527 U.S. 815 (1999), deferred the standing determination of the class because class certification was "logically antecedent" to the standing issues in the case. *Ortiz*, 527 U.S. at 830-31. The standing issues involved the class as a whole or many of the class members, rather than the named plaintiffs. The Court found that the District Court had improperly certified the class, and in holding that the class should never have been certified, the Court obviated the need to decide all of the standing issues that might have been presented if the class had been certified. The jurisdictional issues did not exist but for the class-action certification; thus certification was logically antecedent to the standing issues. *See id.* at 831. *See also Amchem Prods. v. Windsor*, 521 U.S. 591, 612 (1997).

Our case presents a different posture. Here, the Defendant attacks the standing only of the *named* plaintiffs. Named plaintiffs must have case or controversy standing; the potential standing problem in this case is not created by class certification. Therefore class certification is not logically antecedent to the standing problem. Unlike *Ortiz,* there is no reason to defer the standing determination in this case.

Named plaintiffs have standing to pursue claims in states where they reside, and where they purchased Flonase or reimbursed for purchases of Flonase. Therefore the named Plaintiffs have standing in Arizona, Florida, Illinois, Iowa, Massachusetts, North Carolina and Wisconsin.

## B. The question of whether plaintiffs may represent a nationwide class is one to be determined at the class certification stage

Defendant argues in its Motion to Dismiss that Plaintiffs may not represent a nationwide class. This argument is premature; the question of who will comprise the proposed class (i.e. whom named plaintiffs may represent) should be determined at class certification. Further, choice-of-law issues may be determined at or after class certification. *See Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 58 (S.D.N.Y. 1993); *In re Synthroid Mktg. Litig.*, 188 F.R.D. 295, 302 (N.D. Ill. 1999) (declining to make a choice of law determination at the class certification stage). In addition, class certification is logically antecedent to a determination of the standing of proposed class members in certain states. *See Ortiz*, 527 U.S. at 831. Defendant's motion is therefore denied without prejudice.

### C. *Plaintiffs' claims under 12(b)(6)*

Plaintiffs allege monopolization, unfair and deceptive trade practices, and unjust enrichment under several states' laws.

### 1. *Monopolization claims*

At least one named plaintiff alleges monopolization under each of Arizona, Iowa, North Carolina and Wisconsin law. Defendant moves to dismiss plaintiffs' monopolization claims under North Carolina and Wisconsin law.[5]

### *a. North Carolina*

In their Complaint, Plaintiffs Count for monopolization refers generally to N.C. Gen. Stat. §§ 75-1, *et seq.* (Compl. ¶ 34). Chapter 75 is titled "Monopolies, Trusts and Consumer Protection," and has over thirty sections. Section 75-1.1 is know as the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"). Section 75-2.1 is titled "Monopolizing and Attempting to Monopolize Prohibited." Plaintiffs do not specify under which provision they make their monopolization claim. Further, they have not differentiated their North Carolina monopolization claim from their North Carolina unfair and deceptive trade practices claim, which alleges violations of Section 75-1.1. Defendant's Motion to Dismiss the monopolization claim briefs only Section 75-1.1,[6] and Plaintiffs' response does the same. Neither party has briefed a potential claim

---

[5] Defendant does not attack plaintiffs' monopolization claims under Arizona and Iowa law.

[6] Defendant cites N.C. Gen. Stat. § 75-2.1 in its Motion (Mot. to Dismiss 19) but makes no further reference to this provision and does not brief it.

under N.C. Gen. Stat. § 75-2.1. It is conceivable that Plaintiffs' monopolization claim under North Carolina law could come under Section 75-1.1 or 75-2.1. I do not dismiss plaintiffs' claims under N.C. Gen. Stat. § 75-1.1 (*See infra* Part C.2.f below), because the facts alleged by Plaintiffs may support a claim under Section 75-1.1. Defendant has apparently not moved to dismiss any claim under N.C. Gen. Stat. § 75-2.1. Thus, there is no basis for me to dismiss Plaintiffs' monopolization claim under the law of North Carolina. Defendant's Motion to Dismiss Plaintiffs' monopolization claim under North Carolina law is denied. Because the North Carolina monopolization claim and the North Carolina unfair and deceptive trade practices claim state a claim under the exact same statute, N.C. Gen. Stat. § 75-1.1., at this time I consider the two claims one and the same.

### b. Wisconsin

Plaintiffs allege monopolization under Wis. Stat. § 133.01, *et seq.* The Wisconsin antitrust statute aims to prohibit "unfair and discriminatory business practices which destroy or hamper competition," *id.*, and provides penalties for every person "who monopolizes, or attempts to monopolize." Wis. Stat. § 133.03. Section 133.18 provides for a private right of action and treble damages for many victims of monopolistic behavior.

Defendant argues that Plaintiffs have not alleged that the conduct complained of substantially affects the people of Wisconsin. Wisconsin's antitrust statute applies to interstate (in addition to intrastate) commerce where "the conduct complained of 'substantially affects' the people of Wisconsin and has

impacts in [Wisconsin], even if the illegal activity resulting in those impacts occurred predominantly or exclusively outside" of the state. *Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 141 (Wis. 2005); *See also Meyers v. Bayer AG*, 735 N.W.2d 448, 463 (Wis. 2007).

Plaintiffs' allegations—that Defendant's petitions prevented cheaper generic versions of Flonase from entering the market, which caused Plaintiffs and many others to pay higher prices for fluticasone propionate in many states, including Wisconsin—meet Wisconsin's "substantially affects" standard. *See Olstad*, 700 N.W.2d at 141, 158 (remanding case after concluding that Microsoft's alleged anticompetitive conduct—most of which occurred outside of Wisconsin, but which caused Wisconsin consumers to pay artificially high prices for Microsoft products—could meet the "substantially affects" standard); *In re Terazosin*, 160 F. Supp. 2d at 1376 (holding that defendant's alleged participation in interstate conspiracies, which forced consumers to pay artificially high prices for a drug in Wisconsin, had a significant effect on commerce in Wisconsin, regardless of where the conspiracies took place). Defendant's argument to the contrary is incorrect.

Therefore, Defendant's Motion to Dismiss the Wisconsin monopolization claim is denied.

### 2. Unfair and Deceptive Trade Practice Claims

Plaintiffs allege unfair and deceptive trade practices under the laws of Arizona, Florida, Illinois, Iowa, Massachusetts and North Carolina. Defendant

moves to dismiss all of Plaintiffs' unfair and deceptive trade practice claims. I

deny Defendant's motion with respect to claims under the Florida and North

Carolina unfair and deceptive trade practice statutes; I grant the motion for claims

under the Illinois and Iowa statutes; and grant without prejudice Defendant's

motion with respect to the Massachusetts consumer protection claim and the

Arizona consumer fraud claim.

### a. Arizona

The Arizona Consumer Fraud Act ("ACFA") prohibits the:

> act, use or employment by any person of any deception, deceptive act or
> practice, fraud, false pretense, false promise, misrepresentation, or
> concealment, suppression or omission of any material fact with intent that
> others rely upon such concealment, suppression or omission, in connection
> with the sale or advertisement of any merchandise whether or not any
> person has in fact been misled, deceived or damaged thereby.

Ariz. Rev. Stat. Ann. § 44-1522(A).

Defendant argues that the ACFA applies *only* to acts committed within

Arizona. However, the case they cite for this proposition does not limit the ACFA

to acts committed entirely within Arizona. *See State ex rel. Corbin v. Goodrich*,

726 P.2d 215, 221 (Ariz. Ct. App. 1986) (stating that the Act applies to acts

committed within Arizona).

Defendant also argues that under the ACFA, deception is required.

Plaintiffs rebut that the ACFA should be construed similarly to the Federal Trade

Commission Act ("FTC Act"), and that under the FTC Act deception is not

required and antitrust violations such as those alleged in the Second Amended

Complaint constitute a violation of the FTC Act.

While the Arizona statute contains a permissive harmonization provision,[7] Arizona judges are not required to follow federal interpretations of the FTC Act. *See* Ariz. Rev. Stat. Ann. § 44-1522©; *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 177-78 (D. Me. 2004). Further, unlike the FTC Act*,* the plain terms of the ACFA lack a prohibition on unfair acts or methods of competition. Therefore, courts need not conclude that all allegations that would violate the FTC Act necessarily violate the ACFA.

Rather, allegations of deception, and not merely of unfair acts, are required to state a claim under the ACFA. *See In re New Motor Vehicles*, 350 F. Supp. 2d at 178; *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. Ct. App. 2004); *Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83, 87 (Ariz. Ct. App. 1983). The Arizona Court of Appeals has held that "[t]he elements of a private cause of action under the act [ACFA] are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Dunlap*, 666 P.2d at 87. *See Kuehn*, 91 P.3d at 351. *See also Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992).

While certain of Plaintiffs' allegations raise an inference of bad faith and unfair competition on the part of Defendant, the allegations are insufficient to support a conclusion that Defendant made a false promise or misrepresentation.

---

[7] "It is the intent of the legislature, in construing subsection A, that the courts may use as a guide interpretations given by the federal trade commission and the federal courts to 15 United States Code §§ 45, 52 and 55(a)(1)." Ariz. Rev. Stat. Ann. § 44-1522(C).

At most, Plaintiffs allege that Defendant made arguments that had little basis; this is distinct from alleging that Defendant made statements which it knew were false or arguments that it knew violated the FDA's policies, for example, by knowingly failing to include contradictory evidence.[8] Because the Second Amended Complaint does not sufficiently allege facts that demonstrate a misrepresentation, Defendant's Motion to Dismiss the ACFA claim is granted without prejudice. Plaintiffs may amend the complaint.

   *b. Florida*

   Plaintiffs bring claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq*. The relevant language states that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204. Defendant proffers two arguments in an attempt to discredit Plaintiffs' FDUTPA claim. However, Plaintiffs successfully state a claim under the FDUTPA.

   Defendant first argues that the FDUTPA precludes claims by out-of-state consumers.[9] Despite the absence of any plain language in the statute limiting its

---

[8] The filing of a citizen petition to the FDA requires that the petition include a certification which states, *inter alia*, that the petition "includes representative data and information known to the petitioner which are unfavorable to the petition." 21 C.F.R. § 10.30 (2009). If the Plaintiffs had alleged facts to show that the petitions GSK filed made statements that GSK knew were contradicted by data and information, and that GSK knowingly excluded such information, this might be sufficient to allege a misrepresentation.

[9] While this is to some extent an argument that Plaintiffs lack standing, it is separate from the issue of constitutional standing already addressed in part A of the Discussion, "Standing

application to claims by in-state consumers, some Florida cases have read such limitations into the statute. However, the case law is split, and the Florida Supreme Court has not opined on the issue. *Compare Coastal Physician Servs. of Broward County v. Ortiz*, 764 So. 2d 7, 8 (Fla. Dist. Ct. App. 1999) (stating that "non-Florida residents cannot make claims under . . . the Deceptive and Unfair Trade Practices Act"), *and Oce Printing Sys., USA, Inc. v. Mailers Data Servs., Inc.*, 760 So. 2d 1037, 1042 (Fla. Dist. Ct. App. 2000) (citing *Coastal Physician* and agreeing that "the Unfair Trade Act was enacted to protect in-state consumers"), *with Millennium Commc'ns. & Fulfillment, Inc. v. Office of the Attorney Gen.*, 761 So. 2d 1256, 1260-61 (Fla. Dist. Ct. App. 2000) (holding that the FDUTPA does apply to commercial transactions involving non-resident consumers), *and Renaissance Cruises Inc. v. Glassman*, 738 So. 2d 436, 437-440 (Fla. Dist. Ct. App. 1999) (affirming trial court's class certification that applied the FDUTPA to a class that included many non-Florida residents).

Section 501.202 of the Act provides that the provisions in the Act "shall be construed liberally to promote the following policies: . . . (1) To simplify, clarify, and modernize the law . . .[and] (2) To protect the consuming public . . ." There is no reason to read restrictions into the statute that the legislature has failed to include. *Accord Millennium*, 761 So. 2d at 1262. Thus, I predict that the Florida Supreme Court would hold that the FDUTPA allows claims by out-of-state plaintiffs.

---

under 12(b)(1)."

Secondly, Defendant contends that the FDUTPA requires that the injuries take place entirely within the state. Again, the plain language of the statute includes no such limitations, but Defendant cites two cases to support its argument: *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 227 (S.D. Fla. 2002) and *Millennium*. In *New Piper Aircraft*, the plaintiff argued that the FDUTPA could "apply not only to his claim but also [to] the nationwide claims of all putative class members, irrespective of where they lived and suffered alleged diminution in value injury." *Id.* The court disagreed. The *New Piper* court refused to allow a named plaintiff to represent class members who apparently suffered *no* injury in Florida. 209 F.R.D. at 227. The court did not require that the alleged injuries took place entirely within the state. *Id.*

Whereas in *New Piper Aircraft*, putative class members made no allegations that they suffered any injury in Florida, in this case, several plaintiffs allege that they personally suffered injury in Florida through their purchases and/or reimbursements of Flonase. Unlike the named plaintiff in *New Piper*, named plaintiffs here do not seek to apply Florida law to plaintiffs who suffered no injury in Florida. *C.f. In re Wellbutrin*, 260 F.R.D. at 162 ("Plaintiffs' do not seek to apply Florida law to a nationwide class . . . .").

Defendant also cites *Millennium*. The *Millennium* court limited its holding that out-of-state plaintiffs had claims under the FDUTPA to the context involved: Millennium was a Florida corporation and the conduct had taken place in Florida. The language in *Millennium*, however, does not prevent application of the

18

FDUTPA where some of the injury or the actionable conduct takes place outside of the state. *See Millennium*, 761 So. 2d at 1262.

There is no reason to conclude that the FDUTPA requires that the alleged injuries took place *entirely* within the state. Plaintiffs allege some injury in the state of Florida, even if not all of the offending conduct allegedly took place in Florida. This is sufficient to state a claim under the FDUTPA. *Accord In re Wellbutrin*, 260 F.R.D. at 162 (allowing out-of-state indirect purchaser plaintiffs to pursue claims under the FDUTPA where plaintiffs had reimbursed for purchases in Florida, and stating that the FDUTPA "contains no language that would deny relief" to the plaintiffs in the case).

Defendant's Motion to Dismiss Plaintiffs' claim under the FDUTPA is denied.

### c. Illinois

The Second Amended Complaint includes a claim under 815 Ill. Comp. Stat. § 505/1, the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). Section 505/2 states that:

> [u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful.

815 Ill. Comp. Stat. § 505/2. Illinois also has an Antitrust Act. *See* 740 Ill. Comp. Stat. § 10/1.

Defendant appears to argue that the Illinois claim must fail because it is a classic antitrust allegation that cannot be brought under the Antitrust Act, and therefore it cannot be brought under the ICFA. It is correct that the Illinois Supreme Court has refused to allow plaintiffs to state a cause of action that was a typical antitrust allegation under the ICFA, where the legislature had declined to include such a cause of action under the Illinois Antitrust Act. *See Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 993 (Ill. 1990) ("To construe the Consumer Fraud Act to give a cause of action for discriminatory pricing that the legislature refused to give under the Antitrust Act would be incongruous."). Thus, at a minimum, a plaintiff may not use the ICFA when doing so would be "inconsistent with the legislative intent manifested in the Illinois Antitrust Act." *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1048 (N.D. Ill. 2007).

Plaintiffs' claims fall within the parameters of antitrust allegations. Plaintiffs essentially claim that Defendant engaged in unfair, anticompetitive conduct to prolong its monopoly over the market. The Sherman Act is the primary federal antitrust enforcement mechanism, and therefore is instructive. Section 2 of the Act specifically targets monopolies, including monopolization or attempted monopolization by a single firm. *See* 15 U.S.C. § 2.[10] To state a monopolization claim under Section 2, a plaintiff must prove that the defendant possessed monopoly power in the relevant market and engaged in anticompetitive conduct.

---

[10] "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony."

*See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). In addition, the general purpose of the antitrust laws is to encourage competition between sellers, with the corollary of discouraging anticompetitive conduct. *See Great Atlantic & Pacific Tea Co., Inc. v. F.T.C.,* 440 U.S. 69, 83 n.16 (1979); *California v. ARC America Corp.*, 490 U.S. 93, 102, (1989) (the "broad purposes of the federal antitrust laws [are]: deterring anticompetitive conduct and ensuring the compensation of victims of that conduct."). Adam M. Snyder, *Equitable Remedies in Civil RICO Actions: In support of Allowing District Courts to Order Disgorgement*, 74 U. Chi. L. Rev. 1057, 1077 (2007) ("Congress passed the antitrust laws to promote competition and prevent monopolies."). The allegations that Plaintiffs make are classic claims of monopolization—their claim is that Defendant engaged in anticompetitive conduct via the sham petitions in order to prolong its monopoly on the market. The conduct was designed to inhibit competition by potential sellers, precisely the sort of conduct that the antitrust laws are designed to prevent. Thus Plaintiffs claims are fundamentally antitrust allegations.

In this case, Plaintiffs' are prohibited from asserting claims under the Illinois Antitrust Act, because the Act does not provide relief to indirect purchasers through class actions. 740 Ill. Comp. Stat. § 10/7(2) ("[N]o person other than the Attorney General of this State shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act."). *See also Gaebler v. New Mexico Potash Corp.*, 676 N.E.2d 228,

230 (Ill. App. 1996). Because the indirect purchaser class action claims in this case would be precluded under the Illinois Antitrust Act, they cannot be brought under the ICFA instead; to allow otherwise would constitute an end run around the Illinois legislature's determination. *See Laughlin*, 550 N.E.2d at 993; *Siegel*, 480 F. Supp. 2d at 1048.

Plaintiffs' ICFA claims are therefore dismissed.

### d. Iowa

Plaintiffs concede in their Response to the Motion to Dismiss that there is no private right of action under the Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq*. Therefore, this claim is dismissed.

### e. Massachusetts

Plaintiffs assert a claim under Massachusetts General Law Chapter 93A, Regulation of Business Practice for Consumers Protection ("93A"). Under the act, a plaintiff must generally send a written demand for relief to a prospective defendant at least 30 days before filing a complaint. Mass. Gen. Laws ch. 93A § 9.[11]  Defendant argues that plaintiff Kehoe's failure to send a demand letter is fatal to the 93A claim.

"The statutory notice requirement is not merely a procedural nicety, but, rather, 'a prerequisite to suit.'" *Rodi v. S. New England Sch. of Law*, 389 F.3d 5,

---

[11] The relevant section states: "(3) At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent."

19 (1st Cir. 2004) (quoting *Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202, 204 (Mass. 1975)). "Furthermore, 'as a special element' of the cause of action, it must be alleged in the plaintiff's complaint." *Id.*

Massachusetts courts apply the demand requirement strictly. *See Kanamaru v. Holyoke Mut. Ins. Co.*, 892 N.E.2d 759, 768 (Mass. App. Ct. 2008) (affirming summary judgment where plaintiff failed to plead that he had complied with the demand requirement, and where plaintiff had sent a letter to defendant prior to suit but stated in the letter that he was not making a 93A claim now, and instead simply requested that his claim be paid); *City of Boston v. Aetna Life Ins. Co.*, 506 N.E.2d 106, 109 (Mass. 1987) ("The failure of the City to allege the sending of a demand letter is fatal to its § 9 claim."); *Roberts v. Crowley*, 538 F. Supp. 2d 413, 420-21 (D. Mass. 2008) (granting summary judgment to defendants because plaintiffs had not filed a demand letter before suit); *Burns ex rel Office of Public Guardian v. Hale and Dorr LLP*, 445 F. Supp. 2d 94, 96 (D. Mass. 2006) ("Massachusetts courts have strictly adhered to Chapter 93A's demand requirement.").

In this case, named plaintiff failed to send a demand letter to the Defendant before filing the SAC, nor was any demand alleged in the SAC. The fact that plaintiff did thereafter send a letter to Defendant on July 20, 2009, nearly two months after filing the SAC, cannot save plaintiff's claim. The Defendant's Motion to Dismiss the claim under 93A is thus granted without prejudice. If named plaintiff made the appropriate demand, Plaintiffs may file an amended

complaint.

<u>f. North Carolina</u>

Plaintiffs' assert a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), N.C. Gen Stat. § 75-1, *et seq*. Section 75-1.1 states that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Defendant argues that Plaintiffs have not alleged a substantial in-state effect on North Carolina trade or commerce.

To state a claim under the NCUDTPA, plaintiffs must allege that (I) Defendant committed an unfair or deceptive act or practice, (ii) in or affecting commerce and (iii) Plaintiffs were injured as a result. *Lawrence v. UMLIC-Five Corp.*, No. 06 CVS 20643, 2007 WL 2570256, at *5 (N.C. Super. Ct., June 18, 2007). Relief is available to a foreign plaintiff under the NCUDTPA against a resident defendant even over alleged foreign injuries so long as the injuries have a "substantial in-state effect on North Carolina trade or commerce." *Lawrence*, 2007 WL 2570256, at *6. *See also Jacobs v. Cent. Transp. Inc.*, 891 F. Supp. 1088, 1112 (E.D.N.C. 1995), *aff'd in relevant part, rev'd in part*, 83 F.3d 415 (4th Cir. 1996). Plaintiffs sufficiently allege these elements.

Plaintiffs have alleged substantial in-state effect on North Carolina trade or commerce. They allege that Defendant maintains two large development and production facilities in North Carolina, and sold large amounts of Flonase within

the state, including to Plaintiffs, at artificially inflated prices. Defendant's Motion to Dismiss the NCUDTPA claim is denied.

### 3. Unjust Enrichment Claims

Plaintiffs bring claims for unjust enrichment under the laws of Arizona, Florida, Illinois, Iowa, Massachusetts, North Carolina and Wisconsin. Defendant moves to dismiss all of Plaintiffs' unjust enrichment claims. The elements necessary to allege unjust enrichment vary state by state. However, almost all states at minimum require plaintiffs to allege that they conferred a benefit or enrichment upon defendant and that it would be inequitable or unjust for defendant to accept and retain the benefit. *See Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007). *See also* Restatement of Restitution § 1 (1937).[12]

Unjust enrichment is a quasi-contractual theory that allowed courts to disgorge a gain obtained improperly or unjustly by a defendant. *See* Daniel R. Karon, *Undoing the Otherwise Perfect Crime — Applying Unjust Enrichment to Consumer Price-Fixing Claims*, 108 W. Va. L. Rev. 395, 405-406 (2005). It is founded on the principle that a party which receives a benefit under inequitable circumstances should not be permitted to retain the benefit. *Id.* "[R]ecovery for unjust enrichment is normally measured by the defendant's gain rather than the plaintiff's loss—a restitutionary remedy known as disgorgement." *Id.* at 406. Thus

---

[12] Restatement of Restitution § 1 states: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Comment a states: "A person is enriched if he has received a benefit. . . A person is unjustly enriched if the retention of the benefit would be unjust."

the primary purpose of unjust enrichment is to take a benefit away from the defendant wrongdoer, rather than to provide compensation to any plaintiff.

In *Illinois Brick*, the Supreme Court held that any benefit gained by the defendant manufacturer through anticompetitive conduct which violates the federal antitrust laws is to be taken away *solely* by the direct purchaser. This follows from the holding in *Illinois Brick* that indirect purchasers are precluded from recovery under Section 4 of the Clayton Act; only the overcharged direct purchaser, "and not others in the chain of manufacture or distribution, is the party 'injured in his business' within the meaning of the section." 431 U.S. 720, 728-29 (1977). In other words, as a matter of law, the indirect purchaser suffered no injury under Section 4 of the Act and could not sue the manufacturer. Indirect purchasers are not permitted to claim that the injury suffered by direct purchasers, for example overpaying, was passed on to them. See *id.* at 728-29. The Court reasoned that if both direct and indirect purchasers could sue the defendant, this would create a "serious risk of multiple liability for defendants." *Id.* at 730. Next, the Court was concerned about the "uncertainties and difficulties in analyzing price and out-put decisions 'in the real economic world'. . . and of the costs to the judicial system and the efficient enforcement of the antitrust laws of attempting to reconstruct those decisions in the courtroom" if pass-on theories were accepted. *Id.* at 731-32. For these reasons, the Court decided that any benefit which the defendant manufacturer received could only be remedied through a suit by the direct purchaser. The policy of *Illinois Brick* prohibits indirect purchasers from

suing the manufacturer to recover any ill-gotten gains the manufacturer has obtained by violating antitrust laws.

Certain states have adopted *Illinois Brick* and deny indirect purchaser plaintiffs recovery under their state antitrust statutes. These states have adopted the policy of *Illinois Brick* to allow only direct purchasers, and not indirect purchasers, to recover from a defendant for antitrust violations. Allowing indirect purchasers to recover and recoup a benefit from the defendant under an unjust enrichment theory would circumvent the policy choice of *Illinois Brick*. *Accord In re K-Dur Antitrust Litig.*, Civil Action No. 01-1652, 2008 WL 2660780, at *5 (D.N.J., Feb. 28, 2008) ("[W]here the applicable state law bars antitrust actions for damages by indirect purchasers. . . a plaintiff cannot circumvent the statutory framework by recasting an antitrust claim as one for unjust enrichment."); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 211 (D. Me. 2004) ("For those states that have maintained the *Illinois Brick* prohibition on indirect purchaser recovery, I conclude that it would subvert the statutory scheme to allow these same indirect purchasers to secure, for the statutory violation, restitutionary relief at common law (or in equity)."); *In re Terazosin*, 160 F. Supp. 2d at 1380 ("The end payors' unjust enrichment claim raises identical concerns" to those stated in *Illinois Brick*. "State legislatures and courts that adopted the *Illinois Brick* rule against indirect purchaser antitrust suits did not intend to allow 'an end run around the policies allowing only direct purchasers to recover.'").

Thus, where an antitrust defendant's conduct cannot give rise to liability under state antitrust and consumer protection laws, Plaintiffs should be prohibited from recovery under a claim for unjust enrichment. This is true although unjust enrichment has in some cases provided a remedy where there was no adequate remedy at law.[13]

However, states which have rejected *Illinois Brick* and allow indirect purchasers to obtain relief for their injuries are not bound by the policy that only direct purchasers may recover a manufacturer defendant's ill-gotten gains. Therefore, if Plaintiffs meet the requirements these states establish to state a claim for unjust enrichment, their claims for unjust enrichment are not barred.

Illinois has adopted the logic of *Illinois Brick*, and therefore Plaintiffs may

---

[13] Restitution based upon unjust enrichment takes at least two forms: "parasitic" and "autonomous." Where the unjust enrichment is based upon a predicate wrong, such as a tort, breach of contract or other wrongful conduct such as an antitrust violation, the restitution is known as "parasitic." Conversely, unjust enrichment may provide an independent ground for restitution, and this is known as "autonomous" restitution. *See In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 208-09 (D. Me. 2004); Doug Rendleman, *When is Enrichment Unjust? Restitution Visits an Onyx Bathroom*, 36 Loy. L.A. L. Rev. 991, 993 (2003). Plaintiffs do not differentiate which form of restitution they rely on, but presumably in at least some states they would wish to rely on the notion of autonomous restitution. The premise of this type of claim is that even where a defendant's "conduct is blameless under the substantive requirements of federal and state antitrust statutes and state consumer protection statutes, the plaintiffs nevertheless can still obtain restitution." *In re New Motor Vehicles*, 350 F. Supp. 2d at 209. However, allowing such restitution would undermine state legislative policies and an entire body of substantive law. *C.f. Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 937 (3d Cir. 1999) ("We can find no justification for permitting plaintiffs to proceed on their unjust enrichment claim once we have determined that the District Court properly dismissed the traditional tort claims."). I therefore decline to allow autonomous restitution where recovery under state antitrust and consumer protection statutes is specifically prohibited.

not assert a claim for unjust enrichment under Illinois law. All other states—Arizona, Florida, Iowa, Massachusetts, North Carolina and Wisconsin—have at least partially rejected *Illinois Brick*, and unjust enrichment claims in these states are not necessarily barred by the policy choice in *Illinois Brick*.

Defendant argues that nonetheless certain states have made additional policy choices that preclude Plaintiffs from stating a claim for unjust enrichment. I grant the motions directed to claims in Florida and North Carolina because these states have decided that to state a claim for unjust enrichment, as an added element, plaintiffs must confer a benefit directly upon a defendant. I deny the motion to dismiss the unjust enrichment claims in Arizona, Iowa, Massachusetts and Wisconsin.

### a. Arizona

Arizona allows indirect purchasers to state a claim under its antitrust statute. *Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99, 102 (Ariz. 2003). Thus the logic of *Illinois Brick* does not preclude an unjust enrichment claim; because relief is available through the antitrust statute, allowing unjust enrichment claims does not circumvent state policy choices.

Defendant provides no further argument that would bar an unjust enrichment claim in Arizona. *Accord D.R. Ward Const. Co. v. Rohm and Haas Co.*, 470 F. Supp. 2d 485, 506 (E.D. Pa. 2006) (allowing unjust enrichment claims under Arizona law where "defendants cite no cases under Arizona . . . law that

preclude indirect purchasers from bringing unjust enrichment claims.").

Of course, Plaintiffs must meet Arizona's burden for stating a claim of unjust enrichment, and they do. "In Arizona, five elements must be proved to make a case of unjust enrichment: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment and (5) an absence of a remedy provided by law." *Trustmark Ins. Co. v. Bank One*, 48 P.3d 485, 492 (Ariz. Ct. App. 2002); *Cmty. Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. Ct. App. 1995). Plaintiffs satisfactorily allege at least the first four elements. Defendant was enriched with excess profits due to its alleged unlawful monopolization over the Flonase market; Plaintiffs were impoverished because they paid inflated prices; Defendant's financial benefits are traceable to Plaintiffs' overpayments; and such enrichment may be deemed inequitable and unjustified. The fifth element is not a sufficient reason to dismiss an unjust enrichment claim at the motion to dismiss stage, because Plaintiffs at this stage may plead alternate remedies.[14] *See United States v. Kensington Hosp.*, 760 F. Supp. 1120, 1135 (E.D. Pa. 1991); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004).

### b. Florida

Defendant argues that Plaintiffs cannot avail themselves of unjust

---

[14] In other words, if it is determined at a later stage that Plaintiffs do not have a viable statutory claim under Arizona law, they could potentially recover under unjust enrichment.

enrichment to avoid the limitations of Florida's antitrust act. In other words, because Florida law prohibits indirect purchasers from making claims under Florida's antitrust act, Defendant contends that indirect purchasers are prohibited from stating a claim for unjust enrichment. However, while indirect purchasers are not permitted to sue under Florida's antitrust act, they may state claims under the FDUTPA. *See Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 103, 107-08 (Fla. Dist. Ct. App. 1996) (reversing the trial court's dismissal of indirect purchaser plaintiffs' FDUTPA claim). In reversing dismissal of the FDUTPA claim, the *Mack* court rejected application of *Illinois Brick* and effectively rejected much of the logic of *Illinois Brick*. *See id.* at 107 ("[I]t is clear that the principles of *Illinois Brick* and *Hanover Shoe* apply only to antitrust actions under federal law and do not restrict state remedies for antitrust violations."). Because the court found that indirect purchasers could sue under Florida statutory law, there is no reason to bar all indirect purchaser plaintiffs from stating a claim for unjust enrichment.

Defendant also argues that under Florida law, the Plaintiff must confer a benefit directly upon the Defendant. Florida courts have indicated that in order to state a claim for unjust enrichment, the plaintiff must confer a direct benefit on the defendant. *See, e.g., American Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. Dist. Ct. App. 2007) ("The plaintiffs must show they directly conferred a benefit on the defendants."); *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Florida*, 667 So. 2d 876, 879 (Fla. Dist. Ct. App. 1996) ("[T]he

plaintiff, Peoples National, could not and did not allege that it had directly conferred a benefit on the defendants.").

Because, as a general matter, unjust enrichment does not require that the benefit conferred be done so directly, *See* Daniel R. Karon, *Undoing the Otherwise Perfect Crime*, 108 W. Va. L. Rev. 395, 421-22 (2005) (stating that as a general matter, directness or privity is not required to state a claim for unjust enrichment, and often unjust enrichment was available precisely where there was no privity of contract between two parties), there should be a clear statement from the state's courts that it has added such a requirement. As best I can tell, Florida law is clear; it requires that a plaintiff confer a direct benefit upon a defendant in order to state a claim for unjust enrichment. *Accord Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1007 (11th Cir 2004) (affirming summary judgment on unjust enrichment claim under Florida law after determining that plaintiff did not confer a direct benefit on the defendant, and at most conferred an indirect or incidental benefit).

I anticipate that the Florida Supreme Court, applying the direct benefit rule, would preclude indirect purchaser Plaintiffs in this case from stating an unjust enrichment claim. I therefore hold that Plaintiffs unjust enrichment claim under Florida law is dismissed.

### c. Illinois

Illinois law aligns with *Illinois Brick*. Indirect purchaser class actions are

precluded under the Illinois Antitrust Statute or under the ICFA. In this case, allowing Plaintiffs to recover through an unjust enrichment claim would undermine Illinois' legislative choices regarding antitrust law. *See In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d. 160, 209-210. *C.f. Scott v. Glaxosmithkline Consumer Healthcare, L.P.*, No. 05 C 3004, 2006 WL 952032, at *4 (N.D. Ill., Apr. 12, 2006) (denying unjust enrichment claim where underlying ICFA claim was dismissed because unjust enrichment claim was predicated upon the validity of ICFA claim, i.e. upon defendant committing a violation under the ICFA). Defendant's Motion to Dismiss the unjust enrichment claim under Illinois law is granted.

### d. Iowa

Iowa allows indirect purchaser standing under the state's antitrust statute. *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 441 (Iowa 2002). Thus, allowing indirect purchasers to make an unjust enrichment claim does not contravene the state's substantive law. Defendant makes no additional argument that precludes an unjust enrichment claim in Iowa. Under Iowa law, "[u]njust enrichment is a doctrine of restitution. A plaintiff seeking recovery under this doctrine must prove the defendant received a benefit that in equity belongs to the plaintiff." *Slade v. M.L.E. Inv. Co.*, 566 N.W.2d 503, 506 (Iowa 1997) (internal citations omitted). Plaintiffs sufficiently allege facts to establish unjust enrichment under Iowa law. Defendant's Motion to Dismiss the Iowa unjust enrichment claim is denied.

*e. Massachusetts*

Defendant argues that "Massachusetts courts specifically prohibit unjust enrichment claims from being used as an end run around the state's policy choices" (Mot. to Dismiss 31), but cites no Massachusetts state court cases in support of this proposition. While Massachusetts bars indirect purchasers from bringing claims under its antitrust law, *See Ciardi v. F. Hoffman-La Roche Ltd.*, 762 N.E.2d 303, 308 (Mass. 2002), Massachusetts does not bar indirect purchaser standing under its consumer protection act. *See id.* at 309-310. Thus in Massachusetts, courts have not adhered to the premise that an indirect purchaser cannot sue the manufacturer for antitrust violations. Nor can the courts claim strict fidelity to the rationales of *Illinois Brick*, such as avoiding duplicative recovery and complex apportionment problems, because indirect purchaser claims under the consumer protection laws might also lead to duplicative recovery or complicated apportionment issues.

Plaintiffs may therefore bring a claim for unjust enrichment under Massachusetts law. To state a claim for unjust enrichment in Massachusetts, Plaintiffs will be required to give proof of "some misconduct, fault or culpable action on the part of the defendant as 'wrongdoer' which renders his retention of a benefit at the expense of another contrary to equity and good conscience." *DeSanctis v. Labell's Airport Parking Inc.*, 1991 Mass App. Div. 37, 40 (Mass. Dist. Ct. 1991). The Plaintiffs make such a claim; therefore I deny the Motion to Dismiss this claim.

An unjust enrichment claim under North Carolina law is not barred by *Illinois Brick*'s policy, because indirect purchasers may state a claim under the NCUDTPA (*See supra* Part C.2.f).

But, Defendant argues that under North Carolina law a plaintiff must establish that it directly conferred a benefit on the defendant. To survive a challenge to an unjust enrichment claim in North Carolina, a plaintiff is required to "present evidence that a benefit was conferred upon [defendant], that [defendant] 'consciously accepted' that benefit, and that the benefit was not gratuitous." *Norman Owen Trucking, Inc. v. Morkoski,* 506 S.E.2d 267, 273 (N.C. Ct. App. 1998). The North Carolina Court of Appeals has required a plaintiff to establish that it directly conferred a benefit on the defendant. *See Effler v. Pyles*, 380 S.E.2d 149, 152 (N.C. Ct. App. 1989).[15] To override the general premise that a direct benefit is not required, the state courts should make a clear statement to the contrary. The court in *Effler* states that the plaintiff did not satisfy her "burden of showing that she conferred a benefit directly on defendant" and thus denies the plaintiff's unjust enrichment claim. *Effler*, 380 S.E.2d at 152. This statement is sufficiently clear. I therefore find that the Supreme Court of North Carolina would

---

[15] An unreported North Carolina Court of Appeals decision affirmed *Effler's* holding. *See Baker Constr. Co., Inc. v. City of Burlington*, 683 S.E.2d 790, No. COA09-13, 2009 WL 3350747, at *6 (N.C. Ct. App., Oct. 20, 2009) ("[T]his Court has limited the scope of a claim of unjust enrichment such that the benefit conferred must be conferred directly from plaintiff to defendant, not through a third party.").

hold that a direct benefit is required in North Carolina. Indirect purchaser

Plaintiffs unjust enrichment claims in this state are dismissed.

### g. Wisconsin

Wisconsin has not adopted the *Illinois Brick* rule, and indirect purchasers

have standing under the state's antitrust law. *See* Wis. Stat. § 133.18(1)(b) ("any

person injured, directly or indirectly, by reason of anything prohibited by this

chapter may sue"). Therefore an unjust enrichment claim is not precluded by the

policy of *Illinois Brick*. Defendant makes no further argument that would bar an

unjust enrichment claim under Wisconsin law. In Wisconsin, "[t]o recover on a

claim for unjust enrichment, three elements must be proven: (1) a benefit

conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by

the defendant of the benefit; and (3) the acceptance or retention by the defendant

of the benefit under circumstances that makes its retention inequitable." *Tri-State

Mechanical, Inc. v. Northland College*, 681 N.W.2d 302, 306 (Wis. Ct. App.

2004). Plaintiffs sufficiently allege facts to support these elements. The Motion to

Dismiss this claim is denied.

## VI. CONCLUSION[16]

- Plaintiffs have standing in all states where they resided, purchased

    Flonase, or reimbursed for purchases of Flonase. Therefore named

---

[16] Attached to this opinion is Appendix I, which contains two charts summarizing the results of this opinion.

plaintiffs have standing in Arizona, Florida, Illinois, Iowa, Massachusetts, North Carolina and Wisconsin.

• The question of whether named plaintiffs may represent a nationwide class is deferred until the class certification stage.

• I deny the Motion to Dismiss in regards to Plaintiffs' monopolization claims under Arizona, Iowa, North Carolina and Wisconsin law.

• With regards to the unfair and deceptive trade practice claims, the Motion to Dismiss the Illinois and Iowa claims is granted; the Motion to Dismiss the Massachusetts and Arizona claims is granted without prejudice; the Motion to Dismiss the Florida and North Carolina claims is denied.

• The Motion to Dismiss Plaintiffs' unjust enrichment claims under Florida, Illinois and North Carolina law is granted; the Motion to Dismiss Plaintiffs' unjust enrichment claims under Arizona, Iowa, Massachusetts and Wisconsin law is denied.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:        Copies **MAILED** on _____ to: