**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | |
| In re: FLONASE ANTITRUST | : | CIVIL ACTION |
| LITIGATION, | : | |
| | : | NO. 08-CV-3301 |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| Indirect Purchaser Actions | : | |

**September _26__, 2011**                                  **Anita B. Brody, J.**


**MEMORANDUM**

**I. BACKGROUND AND PROCEDURAL HISTORY[1]**

Flonase is a steroid nasal spray containing the active pharmaceutical ingredient

fluticasone propionate ("FP")[2] produced by Defendant SmithKline Beecham Corporation, doing

business as GlaxoSmithKline PLC ("GSK").  Plaintiffs A.F. of L.-A.G.C. Building Trades

Welfare Plan ("AFL"), IBEW-NECA Local 505 Health & Welfare Plan ("IBEW"), International

Association of Bridge, Structural, Ornamental and Reinforcing Ironworkers Local No. 79 Health

Fund ("IABORI "), and Painters District Council No. 30 Health & Welfare Fund ("Painters")

(collectively, "Indirect Purchaser Plaintiffs" or the "Plans") are indirect purchasers of

Flonase—third-party payors that underwrite prescription drug costs for their members ("Plan

---

[1] For purposes of summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor."  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (internal quotations omitted).  Where facts are disputed, the Indirect Purchaser Plaintiffs' account of the facts will be taken as true for the purposes of this motion.

[2] Flonase consists of both the drug, including the aqueous suspension of FP, as well as the metered, atomized spray device that delivers the drug to the active site.

1

Members").[3]  They allege that GSK filed sham citizen petitions with the Food and Drug

Administration ("FDA") to delay the entry of a cheaper, generic version of Flonase into the

market.  As a result, Indirect Purchaser Plaintiffs maintain that they sustained injury when they

purchased or provided reimbursement for purchases of Flonase in the states where those

purchases were made ("purchase states").[4]

Indirect Purchaser Plaintiffs bring claims of monopolization, unfair and deceptive trade

practices ("UDTP"), and unjust enrichment under the laws of certain purchase states.[5]

Specifically, each of the Indirect Purchaser Plaintiffs asserts the following state law claims:

| Plan Name | State Claim(s) Asserted |
|-----------|--------------------------|
| AFL | Florida UDTP |
| IBEW | Florida UDTP |
| IABORI | North Carolina monopolization and UDTP |
| Painters | Arizona, Iowa, and Wisconsin monopolization<br>Arizona and Florida UDTP<br>Arizona, Iowa, and Wisconsin unjust enrichment |

---

[3]The fifth named Plaintiff is Andrea Kehoe.  Kehoe is an individual who resides in Massachusetts, and who receives medical coverage from Blue Cross and prescription drug coverage from Medco.  Kehoe asserts claims against GSK of unfair and deceptive trade practices and unjust enrichment under Massachusetts law.  As GSK has not moved for summary judgment against Kehoe in this motion, her claims will not be addressed.

[4]Two other suits have been filed against GSK, alleging various antitrust violations stemming from the same conduct by GSK.  Am. Sales Co., Inc. v. SmithKline Beecham Corp., No. 08-cv-3149 (E.D. Pa. filed July 3, 2008) (plaintiffs are direct purchasers of Flonase); Roxane Labs., Inc. v. SmithKline Beecham Corp., No. 09-cv-1638 (E.D. Pa. filed April 17, 2009) (plaintiff is manufacturer of generic FP nasal spray and competitor of GSK).

[5] Jurisdiction over this action is proper under the Class Action Fairness Act of 2005, which grants federal district courts original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2); see Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 148 (3d Cir. 2009).

2

Each Indirect Purchaser Plaintiff presents evidence it deems sufficient to support its allegations that it purchased or provided reimbursements for Flonase purchases in at least one of the following purchase states—Arizona, Florida, Iowa, North Carolina, and Wisconsin—to tie itself to an injury in those states.

A brief review of the procedural history will be beneficial at this point.  On September 3, 2008, Indirect Purchaser Plaintiffs filed a first amended class action complaint ("FAC") against GSK asserting claims of monopolization, UDTP, and unjust enrichment under numerous state laws.  GSK moved to dismiss the FAC by arguing that Indirect Purchaser Plaintiffs had not alleged any injury in any state to establish standing to bring their state law claims or, alternatively, had not stated a claim under any of those laws.  In ruling on this motion, I inferred that each Indirect Purchaser Plaintiff could establish enough contacts in the state where it resides or has a principal place of business ("home state") to possess standing.  However, I found that none of the Indirect Purchaser Plaintiffs had stated a claim under the laws of their home states. (ECF No. 53)

On May 21, 2009, Indirect Purchaser Plaintiffs filed a second amended class action complaint ("SAC") asserting the same three counts under the laws of the purchase states.  They also asserted a claim of UDTP under the law of a home state (Illinois).  GSK moved to dismiss the SAC by arguing that Indirect Purchaser Plaintiffs had not sufficiently plead an injury to have standing in either their home states or purchase states.  On January 21, 2010, I held that the Indirect Purchaser Plaintiffs had sufficiently plead "standing in states where they are located or where they purchased Flonase or reimbursed for purchases of Flonase."  (ECF No. 82, at 6).

However, I concluded that Indirect Purchaser Plaintiffs had failed to state a claim for UDTP under Illinois law.  As a result, Indirect Purchaser Plaintiffs filed a third amended class action complaint ("TAC") on March 1, 2010, only asserting claims of monopolization, UDTP, and unjust enrichment under the laws of purchase states, specifically North Carolina, Florida, Arizona, Iowa, and Wisconsin.

On October 29, 2010, GSK filed a motion for summary judgment (ECF No. 180) against the Indirect Purchaser Plaintiffs based on three grounds.  First, GSK argues that Indirect Purchaser Plaintiffs have not provided sufficient evidence to raise a genuine issue of material fact as to whether they have standing to bring claims under the laws of the states in which they reimbursed purchases of Flonase.  Second, GSK argues that even if Indirect Purchaser Plaintiffs possess standing, choice of law rules require that the Indirect Purchaser Plaintiffs' claims be governed by the laws of their home states, rather than the laws of the states in which their members were reimbursed.  As I have already held that Indirect Purchaser Plaintiffs cannot state a claim in their home states, GSK argues, their claims must be dismissed.  Finally, GSK asserts that Indirect Purchaser Plaintiffs have failed to provide evidence in support of the following claims: (1) Painters, AFL, and IBEW's claim of UDTP under Florida law, (2) Painters' claim of UDTP under Arizona law, and (3) IABORI's claims of monopolization and UDTP under North Carolina law.  For the reasons set forth below, I will grant in part and deny in part GSK's motion for summary judgment.

## II. LEGAL STANDARD

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  There is a "genuine" issue of material fact if the evidence would permit a reasonable jury

to find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The "mere existence of a scintilla of evidence" is insufficient.  Id. at 252.

The moving party must make an initial showing that there is no genuine issue of material

fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The non-movant must then "make a

showing sufficient to establish the existence of [every] element essential to that party's case, and

on which that party will bear the burden of proof at trial."  Id. at 322; see also Fed. R. Civ. P.

56(c)(1).  The non-moving party must "do more than simply show that there is some

metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986).  In determining whether the non-moving party has established each

element of its case, the court must draw all reasonable inferences in the non-moving party's

favor.  Id. at 587.

## III. DISCUSSION

### A.  Standing

Article III of the Constitution requires that a plaintiff have standing to assert his or her

claims.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  In a class action, "[t]he initial

inquiry . . . is whether the lead plaintiff individually has standing."  Winer Family Trust v.

Queen, 503 F.3d 319, 326 (3d Cir. 2007); see also O'Shea v. Littleton, 414 U.S. 488, 494 (1974).

At a minimum, constitutional standing requires three elements: (1) injury-in-fact, which is an

invasion of a legally protected interest that is concrete and particularized, and actual or imminent;

(2) causation; and (3) likelihood that the injury will be redressed by a favorable decision.  Lujan,

504 U.S. at 560-61; Winer, 503 F.3d at 326.  "The party invoking federal jurisdiction bears the

5

burden of establishing these elements." Lujan, 504 U.S. at 561.  The relevant inquiry is "whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction . . . ."  Warth v. Seldin, 422 U.S. 490, 498 (1975) (citation and internal quotation marks omitted).

In a previous opinion, I held that the named Plaintiffs had sufficiently plead "standing in states where they are located or where they purchased Flonase or reimbursed for purchases of Flonase."  (ECF No. 82, at 6).  However, "the showing (whether as to standing or the merits) required to overcome a motion for summary judgment is more extensive than that required in the context of a motion to dismiss.  The principal difference is that in the former context evidence is required, while in the latter setting the litigant may rest upon the allegations of his complaint." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 902 (1990).

Indirect Purchaser Plaintiffs have alleged a redressable injury—paying too much for Flonase in states where they purchased Flonase or where they reimbursed Plan Members for Flonase purchases.  The question now before me is whether each individual Indirect Purchaser Plaintiff has presented sufficient evidence to support its allegation that it purchased or provided reimbursements for Flonase purchases in the purchase states—Arizona, Florida, Iowa, North Carolina, and Wisconsin—to tie itself to an injury in those states.

1.  *Evidence of the Plans' Standing*

i.  *AFL*

AFL is a welfare benefit plan with its principal place of business in Alabama.  The AFL Plan covers unions in Alabama and Florida.  Blue Cross and Blue Shield administers the prescription drug benefit for the AFL Plan.  AFL Plan Members have resided in Florida and

6

made purchases covered by AFL in Florida since at least May 2004. Indirect Purchaser Plaintiffs offer as evidence of these reimbursements a spreadsheet identifying each of the Florida purchases that were reimbursed by AFL.  Pls.' Resp. Ex. 2.

> ii.  IBEW

IBEW is a welfare benefit plan with its principal place of business in Alabama.  The IBEW Plan covers the Local 505 union members who are employed by Alabama employers. IBEW Plan participants may establish permanent residence outside Alabama, and in fact many live in Florida.  Blue Cross and Blue Shield administers the prescription drug benefit for the AFL Plan.  IBEW reimbursed a number of Flonase purchases in Florida between 2004 and 2006. Indirect Purchaser Plaintiffs offer as evidence of these reimbursements a spreadsheet identifying each of the Florida purchases that were reimbursed by IBEW.  Pls.' Resp. Ex. 2.

> iii.  IABORI

IABORI is a welfare benefit plan located in Goodlettsville, Tennessee.  The IABORI Plan covers union members located primarily in Virginia.  Southern Benefit Administrators ("Southern Benefit") is a third party that administers pension payments and health benefits for the IABORI plan.  Indirect Purchaser Plaintiffs assert that IABORI Plan Members have been reimbursed for at least two purchases of Flonase made in North Carolina.  Indirect Purchaser Plaintiffs offer as evidence of these reimbursements two receipts showing that purchases were made in North Carolina, two Explanation of Benefit forms, and a spreadsheet allegedly showing that those purchases were reimbursed by IABORI.  Pls.' Resp. Ex. 4 at IABORI_00351, 00359, 00360, 00335, 00341.

> iv.  Painters

7

Painters is a welfare benefit plan located in Aurora, Illinois.  The Painters Plan's prescription drug benefits are administered by Caremark/CVS, located in Arizona.  The Plan has members in Wisconsin and Arizona, among other states.  Indirect Purchaser Plaintiffs assert that Painters has reimbursed its Plan Members for purchases in Arizona, Iowa, Florida, and Wisconsin.  Indirect Purchaser Plaintiffs offer as evidence of these reimbursements four spreadsheets identifying reimbursements made by Painters.  Pls.' Resp. Ex. 9.

  *2. Sufficiency of the Plans' Evidence of Standing*

Considering this evidence, GSK argues that the Indirect Purchaser Plaintiffs lack standing for three reasons: (1) the Plans have offered no evidence that reimbursement checks were physically delivered into Arizona, Florida, Iowa, North Carolina, and Wisconsin; (2) the Plans have not provided authenticated evidence showing that they purchased Flonase or reimbursed their members for Flonase purchases in Arizona, Florida, Iowa, North Carolina, and Wisconsin; and (3) the Plans' data does not include sufficient geographic information showing that they purchased Flonase or reimbursed their members for Flonase purchases in Arizona, Florida, Iowa, North Carolina, and Wisconsin.

As to the first argument, GSK misunderstands the law.  I previously held that "each named plaintiff has standing to bring a claim under the laws of the states where they are located, and where they purchased Flonase or reimbursed their members for Flonase purchases." (ECF No. 82, at 7).  GSK seems to understand my opinion to confer standing under the laws of states in which reimbursement checks were sent.  GSK is wrong.  Like many courts before me, I held that the Plans could have standing to assert claims under the laws of states in which Plan Members made Flonase purchases, where those purchases were reimbursed by the Plans.  See

generally In re Wellbutrin XL Antitrust Litig., 260 F.R.D. 143, 157 (E.D. Pa. 2009)

("[P]laintiffs' claims have clear connection to . . . the states where their members made

purchases."); In re Terazosin Hydrochloride Antitrust Litig., 220 F.R.D. 672, 680-82 (S.D. Fla.

2004) (holding that individual named plaintiffs had standing to assert claims in states in which

purchases were made and where the plans reimbursed those purchases); Ferrell v. Wyeth-Ayerst

Labs, Inc., No. C-1-01-447, 2004 U.S. Dist. LEXIS 15127, at *13 (S.D. Ohio, June 30, 2004)

(same).  Therefore, GSK's first argument is without merit.

  As to its second argument, GSK is correct that at summary judgment it may challenge the

authenticity of Indirect Purchaser Plaintiffs' evidence.  See Fed. R. Civ. P. 56(c)(2) ("A party

may object that the material cited to support or dispute a fact cannot be presented in a form that

would be admissible in evidence.").  The Supreme Court and Third Circuit, though, have "not

precluded reliance on unauthenticated documents to oppose a motion for summary judgment, so

long as they are ultimately 'reduc[ible] to admissible evidence.'"  Lexington Ins. Co. v. W. Pa.

Hosp., 423 F.3d 318, 329 n.6 (3d Cir. 2005) (citation omitted) (quoting Celotex, 477 U.S. at

327).

  As a condition precedent to admissibility, evidence must be authenticated.  However,

"[t]he burden of proof for authentication is slight."  McQueeny v. Wilmington Trust Co., 779

F.2d 916, 928 (3d Cir. 1985).  The Federal Rules of Evidence provide several examples of ways

in which evidence might authenticated, but these methods are not deemed exhaustive.[6]   It is only

---

[6]Some of the methods of authentication identified in the Rules are testimony of a witness
with knowledge, evidence of distinctive characteristics, public records or reports, and evidence of
an accurate process or system.  See Fed. R. Evid. 901(b).  These methods are listed "[b]y way of
illustration only, and not by way of limitation . . . ." Id.

necessary that the evidence in question be authenticated by "evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901(a). Furthermore, certain records do not need extrinsic evidence of authenticity, but instead are self-authenticating.  <u>See</u> Fed. R. Evid. 902.  Business records of regularly conducted activity are self-authenticating if they are "accompanied by a written declaration of its custodian or other qualified person . . . ."  Fed. R. Evid. 902(11).  Specifically, the declaration must state that the record:

> (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
>
> (B) was kept in the course of the regularly conducted activity; and
>
> (C) was made by the regularly conducted activity as a regular practice.

<u>Id.</u>  In addition to being "reducible to admissible evidence," Indirect Purchaser Plaintiffs' evidence must be sufficient to raise a genuine issue as to whether Indirect Purchaser Plaintiffs suffered an injury in the relevant purchase states to give them standing to assert their purchase state claims.  <u>Lujan</u>, 497 U.S. at 902.

To show that the Plans purchased Flonase or provided reimbursements for Flonase purchases in Arizona, Florida, Iowa, North Carolina, and Wisconsin, Indirect Purchaser Plaintiffs rely primarily on spreadsheet printouts that list each of the purchases made or reimbursed by the Plans.  In their surreply to GSK's motion, Indirect Purchaser Plaintiffs offer evidence to authenticate the data in their spreadsheets by attaching declarations and certifications from record custodians and plan administrators.  <u>See</u> Epstein Certification, Faulkner Certification, Creuzer Certification.  Indirect Purchaser Plaintiffs argue that their spreadsheet data includes sufficient

geographic information to raise a genuine issue of material fact as to whether they purchased Flonase, or reimbursed Plan Members for such purchases, in Arizona, Iowa, Florida, and Wisconsin.

### i.  AFL and IBEW

As evidence that AFL and IBEW have standing to pursue their Florida UDTP claims, Indirect Purchaser Plaintiffs submit a spreadsheet identifying Flonase purchases made or reimbursed by AFL and IBEW.  Indirect Purchaser Plaintiffs attach to their surreply a certification from the Blue Cross and Blue Shield records custodian for AFL and IBEW's spreadsheet data.  See Creuzer Certification.  This certification attests to the truth and completeness of the data included in AFL and IBEW's spreadsheets.  This certification also attests that the Plans' data was created and maintained in the usual course of business.  This certification is sufficient to authenticate the data contained in AFL and IBEW's spreadsheets.

Additionally, the spreadsheet data shows that AFL reimbursed Plan Members for several Flonase purchases at a Target Pharmacy in Panama City, Florida between 2004 and 2006.  Pls.' Resp. Ex. 2.  The data also shows that IBEW reimbursed Plan Members for several Flonase purchases at a Burklow Pharmacy in Pace, Florida between 2004 and 2006.  Id.  Because AFL and IBEW's evidence is sufficiently authenticated and shows that the Plans reimbursed Plan Members for purchases made in Florida, AFL and IBEW have provided sufficient evidence to show that they have standing to assert their UDTP claims under Florida law.

### ii.  IABORI

Indirect Purchaser Plaintiffs offer three pieces of evidence to show IABORI has standing to assert its monopolization and UDTP claims under North Carolina law: (1) two spreadsheets

showing Flonase purchases made or reimbursed by IABORI, (2) two Explanation of Benefit forms, and (3) two pharmacy receipts. Indirect Purchaser Plaintiffs attach to their surreply a certification from the Southern Benefit records custodian for IABORI's data. See Faulkner Certification. This certification attests that the "data produced [is] true, authentic and complete . . . ." Id. This certification also attests that the Plan's data was created and maintained in the usual course of business. This certification is sufficient to authenticate the spreadsheet data and Explanation of Benefit forms, both of which include the markings of Southern Benefit on the bottom of each page. Pls.' Resp. Ex. 4 at IABORI_00351, 00359, 00335, 00341.

Although the spreadsheets and Explanation of Benefit forms showing IABORI's reimbursements have been authenticated, Indirect Purchasers Plaintiffs have offered no evidence authenticating the receipts purporting to show Flonase purchases in North Carolina that were reimbursed by IABORI. Id. at IABORI_00360. Nor do they argue anywhere in their briefs that these receipts are somehow self-authenticating. The record also fails to indicate that IABORI relied on these receipts in any capacity. One of the receipts identifies a Flonase purchase at a Wal-Mart pharmacy in North Carolina, but does not provide any information as to who purchased the Flonase or whether IABORI reimbursed the purchase. Id. The second receipt provides no information whatsoever except a price. Id. IABORI may rely on unauthenticated documents—that are "ultimately 'reducible to admissible evidence'"—in opposing GSK's motion. Lexington Ins. Co., 423 F.3d at 329 n.6 (quoting Celotex, 477 U.S. at 327). However, IABORI has not made a prima facie showing of authenticity for the receipts or given any indication whatsoever that these unauthenticated documents could ultimately be reduced to admissible evidence. There is simply no evidence in the record that would "support a finding

that the matter in question is what its proponent claims."  Fed. R. Evid. 901.

Without the receipts themselves, there is no evidence in the record that IABORI reimbursed purchases in North Carolina.  Certainly, IABORI's spreadsheet shows reimbursements were made, but the spreadsheet lacks any geographical information on the purchase.  Id. at IABORI_00335, 00341.  The Explanation of Benefit forms, meanwhile, are barely legible and also lack any information about the purchaser or location of the purchase.  Id. at IABORI_00351, 00359.  Thus, there is no way to determine in which states individual purchases were made.  Indirect Purchaser Plaintiffs have not provided sufficient evidence to show a genuine issue of material fact concerning IABORI's standing to assert its claims. Therefore, I will grant GSK's motion as to IABORI's claims of monopolization and UDTP under North Carolina law.

### iii.  Painters

Indirect Purchaser Plaintiffs provide four spreadsheets of data as evidence that Painters has standing to assert its claims under the laws of Arizona, Florida, Iowa, and Wisconsin. Indirect Purchaser Plaintiffs attach to their surreply a declaration from Painters' plan administrator attesting to the accuracy of the data used in Indirect Purchaser Plaintiffs' spreadsheets.  See Epstein Decl.  Painters' plan administrator is not the records custodian for this data, and thus the data may not be self-authenticating under Federal Rule of Evidence 902(11).[7]  Nonetheless, the declaration does state that the data is used "in the ordinary course of operations of Painters," and that the data is used "in order to discharge . . . Painters'

---

[7]To self-authenticate a business record of regularly conducted activity, one must include "a written declaration of [the record's] custodian or other qualified person . . . ."  Fed. R. Evid. 902(11).

duties to its members."  Epstein Decl. ¶ 5.  That the Plan regularly relies on this data in

discharging its obligations to its members is an indicia of reliability and is sufficient "to support a

finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901.  The

Declaration is thus sufficient to authenticate Painters' data.[8]

      Concerning the sufficiency of the data, Indirect Purchaser Plaintiffs claim Painters'

spreadsheets are as detailed in showing Plan purchases of Flonase as those offered by AFL and

IBEW.  This is not the case.  Painters' data consists of four spreadsheets, each of which—when

considered separately—lacks information necessary to show the Plan purchased Flonase, or

reimbursed for purchases of it, in Arizona, Iowa, Florida, and Wisconsin.  The first spreadsheet

("Spreadsheet I") provides the date, quantity, and cost of various Flonase purchases between

2005 and 2008, but does not provide any geographic information concerning these purchases.

Pls.' Resp. Ex. 9 at PDC No. 30 H & W, FLO 00335-418.  The second spreadsheet

("Spreadsheet II") shows the date, quantity, cost, and residence of the purchasing Plan Member

for Flonase purchases between 2007 and 2009.  It does not include any geographic information

about where the relevant purchases took place.  Id. at PDC No. 30 H & W, FLO 00419-430.  The

third spreadsheet ("Spreadsheet III") is exactly like Spreadsheet II, except it applies to Flonase

purchases in 2006.  Id. at PDC No. 30 H & W, FLO 00431-433.  The final spreadsheet

---

    [8]Authentication, however, is a separate issue from hearsay.  Compare Fed. R. Evid. 801
with 901.  The administrator may not have the same knowledge of how the data was gathered as
the records custodian, and without this knowledge, the Declaration may not ultimately be
sufficient to show that the spreadsheets are admissible.  See Fed. R. Evid. 803(6) (hearsay
exception for records of regularly conducted activity); 805 (rule governing hearsay within
hearsay).  Because this evidence was only raised in Plaintiffs' surreply, however, this issue has
not been fully briefed.  Thus, while I find that Indirect Purchaser Plaintiffs' data relating to
purchases by Painters has been authenticated by virtue of Painter's Declaration, I do not address
whether that data is admissible.  GSK may raise this issue in limine prior to trial.

("Spreadsheet IV") lists the pharmacy locations for out-of-Illinois purchases between March 31, 2006 and April 1, 2009; however, it does not indicate which purchases were for Flonase. Id. at PDC No. 30 H & W, FLO 00434.

Although independently none of the spreadsheets include sufficient geographic information on the relevant purchases, when considered together, they demonstrate that Painters has standing to assert claims under the laws of Wisconsin and Arizona. Specifically, Spreadsheets II and III show that Plan Members from Lake Geneva, WI, Kenosha, WI, and Janesville, WI made purchases of Flonase for a cost that matches the total amount paid by Painters (shown in Spreadsheet IV) for purchases at pharmacies located in those same cities during the same time period. Similarly, Spreadsheet III shows that a Plan Member from Vail, AZ made a purchase of Flonase for a cost that falls within the total amount paid by Painters (shown in Spreadsheet IV) for purchases at pharmacies located in Mesa, AZ and Tucson, AZ during the same time period. While this data does not confirm that these Flonase purchases actually happened in Wisconsin and Arizona, at summary judgment I must draw all reasonable inferences in favor of the non-moving party. I find sufficient evidence in the record to raise a genuine issue of material fact as to whether Painters reimbursed Plan Members for purchases made in Wisconsin and Arizona.

The data regarding Painters' alleged reimbursements for Flonase purchases in Florida and Iowa is more dubious. Indirect Purchaser Plaintiffs argue Painters has standing because Spreadsheet IV shows it made reimbursements for purchases at pharmacies in Miramar, FL and Coralville, IA between March 31, 2006 and April 1, 2009. However, as noted already, Spreadsheet IV gives no indication as to which purchases were for Flonase. More importantly,

15

looking at Spreadsheets II and III, not a single Plan Member who purchased Flonase between 2006 and 2009 resided in Iowa or Florida.[9]  Indirect Purchaser Plaintiffs' evidence is simply too attenuated and speculative to show standing for Painters' Iowa and Florida claims.  See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999) ("Speculation and conclusory allegations do not satisfy [the] duty" of the non-moving party to "set forth specific facts showing a genuine issue of material fact . . . .").  Therefore, I will grant GSK's motion as to Painters' claims under Iowa and Florida law.

In summary, I find the following with respect to each Indirect Purchaser Plaintiff's standing to assert its state law claims:

| Plaintiff | Type of Claim | State | Ruling |
|---|---|---|---|
| AFL | Unfair and deceptive trade practice | Florida | Genuine issue as to standing |
| IABORI | Monopolization, unfair and deceptive trade practice | North Carolina | Dismissed, no standing |
| IBEW | Unfair and Deceptive Trade Practice | Florida | Genuine issue as to standing |
| Painters | Monopolization, unfair and deceptive trade practice, and unjust enrichment | Arizona | Genuine issue as to standing |
| Painters | Monopolization, unjust enrichment | Wisconsin | Genuine issue as to standing |
| Painters | Unfair and deceptive trade practice | Florida | Dismissed, no standing |

---

[9]Of course, a Flonase purchase might have occurred in Iowa or Florida.  For example, a Painters' Plan Member from Tennessee could have traveled to Florida, and while in Florida, gone to a pharmacy and purchased Flonase.  Speculative possibilities, though, do not satisfy the opposing party's burden at summary judgment.  See Matsushita, 475 U.S. at 586 (explaining that party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts").

| Painters | Monopolization, unjust enrichment | Iowa | Dismissed, no standing |

**B.  Choice of Law**[10]

GSK argues that Pennsylvania's choice of law rules require Indirect Purchaser Plaintiffs'

claims to proceed exclusively under the laws of the states in which they are located ("home

states"), not the laws of the states where they purchased Flonase or reimbursed Plan Members for

Flonase purchases ("purchase states").  GSK moves for summary judgment on this ground

because I have already held that the Indirect Purchaser Plaintiffs cannot state their claims in their

home states.  Therefore, if the laws of the Indirect Purchaser Plaintiffs' home states govern these

claims, GSK is entitled to summary judgment on all counts.  While I agree that a choice of law

analysis is appropriate, I find that the laws of the purchase states should be applied to the Indirect

Purchaser Plaintiffs' claims.

In determining which law governs in a diversity case, a federal court must apply the

choice of law rules of the forum state.  Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 496

---

[10]On January 21, 2010, I stated that I was deferring the choice of law determination until after class certification was decided, explaining that "choice-of-law issues may be decided at or after class certification."  (ECF No. 82, at 10).  On July 14, 2010, I deferred the class certification inquiry in light of the Third Circuit's en banc rehearing of Sullivan v. DB Investments, 619 F.3d 287 (3d Cir. 2010).  (ECF No. 158).  GSK asks me to reconsider my decision to defer the choice of law determination as to the Indirect Purchaser Plaintiffs because fact discovery in this case is complete, and "[t]here is no additional information that Plaintiffs have identified as necessary to complete a thorough analysis of the contacts that each Plaintiff has with various states."  Mot. Summ. J. in Indirect Purchaser Actions 11.
The Third Circuit has made clear that in a class action suit, a court "must apply an individualized choice of law analysis to each plaintiff's claims."  Georgine v. Amchem Prod., Inc., 83 F.3d 610, 627 (3d Cir. 1996).  Because a choice of law determination must be conducted on an individualized basis, and because fact discovery is now complete, I agree that a choice of law determination is appropriate as to the Indirect Purchaser Plaintiffs.

(1941); Melville v. American Home Assur. Co., 584 F.2d 1306, 1308 (3d Cir. 1978).  Therefore,

Pennsylvania's choice of law rules control.  However, "[b]efore a choice of law question arises,

there must first be a true conflict between the potentially applicable bodies of law."[11]  Huber v.

Taylor, 469 F.3d 67, 74 (3d Cir. 2006).  "If a true conflict exists, the court must then determine

which state has the 'greater interest in the application of its law.'"  Hammersmith v. TIG Ins. Co.,

480 F.3d 220, 230 (3d Cir. 2007) (quoting Cipolla v. Shaposka, 267 A.2d 854, 856 (Pa. 1970)).

   *1.  A True Conflict Exists Between the Laws of the Home States and the Laws of the*
   *Purchase States*

   GSK asks me to make a choice of law determination between the home state and the

purchase state(s) for each of the Plans.  As a result, I must determine, for each of the Plans,

whether a true conflict exists between the laws of that Plan's home state, and that Plan's

purchase state(s).  "A true conflict exists when the governmental interests of [multiple]

jurisdictions would be impaired if their law were not applied."  Chappell, 407 F.3d at 170

(citation and internal quotation marks omitted).  I already determined in previous opinions that

none of the Plans' home states permit recovery.[12]  (ECF Nos. 53, 82).  I also found that the Plans

---

[11]"Under Pennsylvania law, we begin with an 'interest analysis' of the policies of all
interested states and then-based on the result of that analysis-characterize the case as a true
conflict, false conflict, or unprovided-for case."  Budget Rent-A-Car Sys., Inc. v. Chappell, 407
F.3d 166, 170 (3d Cir. 2005).  "A true conflict exists when the governmental interests of
[multiple] jurisdictions would be impaired if their law were not applied."  Id. (citation and
internal quotation marks omitted).  A false conflict is present when, even though the laws of
multiple jurisdictions have relevant differences, "only one jurisdiction's governmental interest
would be impaired by the application of the other jurisdiction[s'] law."  Id. (citation and internal
quotation marks omitted).  "Finally, an unprovided-for case arises when no jurisdiction's interests
would be impaired if its laws were not applied."  Id.

[12]The three home states for Indirect Purchaser Plaintiffs are Tennessee, Illinois, and
Alabama.  Indirect Purchaser Plaintiffs have failed to state a viable claim under the laws of each
of their home states.  Each home state will be addressed in turn.

   In their first amended class action complaint ("FAC"), Indirect Purchaser Plaintiffs

may be able to recover under the laws of the purchase states—Arizona, Florida, and Wisconsin.[13]

---

alleged that GSK violated the Tennessee Trade Practices Act ("TTPA"), Tenn. Code. Ann. §§ 47-25-101, *et seq.* The TTPA prohibits only antitrust conspiracies and requires that an alleged antitrust violation have a substantial effect on intrastate commerce. In dismissing the TTPA claim, I found that the FAC failed to allege that GSK acted in concert with any other party and that the anticompetitive conduct had a substantial effect on Tennessee commerce. I also noted that Indirect Purchaser Plaintiffs cannot bring antitrust claims based on anticompetitive conduct under the Tennessee Consumer Protection Act, Tenn. Code. Ann. §§ 47-18-101, *et seq.* (ECF No. 53). Therefore, Indirect Purchaser Plaintiffs have failed to state a viable claim of monopolization or UDTP under Tennessee law.

In both their FAC and second amended class action complaint ("SAC"), Indirect Purchaser Plaintiffs alleged GSK violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ILCFA"), 815 Ill. Comp. Stat. § 505/1, *et seq.* I found that Indirect Purchaser Plaintiffs alleged classic antitrust violations, not deceptive practices, and that such antitrust allegations could not be brought under the ILCFA. See Laughlin v. Evanston Hosp., 550 N.E.2d 986 (Ill. 1990). Furthermore, I noted that Indirect Purchaser Plaintiffs cannot bring their allegations under the Illinois Antitrust Act because only the state attorney general may maintain a class action on behalf of indirect purchasers for antitrust violations under the act. 740 Ill. Comp. Stat. § 10/7(2). (ECF Nos. 53, 82). In footnotes within their response and surreply, Indirect Purchaser Plaintiffs claim that they are now entitled to bring a state antitrust action under the Illinois Antitrust Act based on the Supreme Court's recent decision in Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., --- U.S. ---, 130 S. Ct. 1431, 176 L.Ed.2d 311 (2010). Indirect Purchaser Plaintiffs cite no case law and provide little reasoning as to how an Illinois Antitrust Act claim would now be viable. If Indirect Purchaser Plaintiffs are serious about bringing an action under the Illinois Antitrust Act, they must do so by a motion. Up to this point, Indirect Purchaser Plaintiffs have failed to state a viable claim of monopolization or UDTP under Illinois law.

At no point have Indirect Purchaser Plaintiffs asserted any claims under Alabama law.

Finally, Indirect Purchaser Plaintiffs cannot assert a viable unjust enrichment claim under any home state's law. This is because I previously held that if GSK's conduct cannot give rise to liability under the antitrust and consumer protection laws of the home states, Indirect Purchaser Plaintiffs should be prohibited from recovery under a claim for unjust enrichment in the home states. See (ECF No. 82, at 28).

Therefore, Indirect Purchaser Plaintiffs have failed to state a viable monopolization, UDTP, or unjust enrichment claim under the laws of their home states.

[13]Previously, in denying GSK's motion to dismiss, I found Indirect Purchaser Plaintiffs had stated viable claims under the laws of Arizona, Florida, and Wisconsin. Specifically, I found that the following claims might be viable: (1) Painters' monopolization and unjust enrichment claims under Wisconsin law, (2) AFL's and IBEW's UDTP claims under Florida law, and (3) Painters' unjust enrichment claim under Arizona law. (ECF No. 82). Furthermore, Painters' Arizona monopolization claim may still be viable because neither GSK's motion to dismiss nor its motion for summary judgment substantively challenged it.

(ECF No. 82).  This is enough to create a true conflict between the laws of each Plan's home

state, and that Plan's purchase state(s), because the interests of multiple jurisdictions clearly

"would be impaired if their law were not applied."  Chappell, 407 F.3d at 170; see also In re

Wellbutrin XL Antitrust Litig., No. 08-2433, 2011 WL 3563835, at *5 (E.D. Pa. Aug. 15, 2011)

(finding true conflict in similar choice of law analysis).

    *2.  The Purchase States have the Greater Interest in the Application of their Laws*

    Because a true conflict exists between the laws of the Plans' home states and the purchase

states, I must consider which states, either the home states or the purchase states, have the

"greater interest in the application of its law."  Hammersmith, 480 F.3d at 230 (quoting Cipolla,

267 A.2d at 856).  "This analysis requires more than a mere counting of contacts.  Rather, we

must weigh the contacts on a qualitative scale according to their relation to the policies and

interests underlying the [particular] issue."  Id. at 231 (citations and internal quotation marks

omitted).  In other words, determining which state has a greater interest in the application of its

laws requires an inquiry both into the number and nature of contacts at issue, as set forth in the

Restatement (Second) of Conflict of Laws, as well as the policies and governmental interests

underlying the issue.  Id.  This inquiry is not a general, all-encompassing contacts analysis, but

rather considers which state has the "most significant contacts or relationships with the particular

---

    The viability of Painters' Arizona UDTP claim is less certain. While GSK's motion to
dismiss was granted without prejudice as to Painters' Arizona UDTP claim because Indirect
Purchaser Plaintiffs had not alleged deception by GSK,  I permitted Indirect Purchaser Plaintiffs
to amend their SAC to sufficiently allege deception, noting that it might be possible for them to
make a sufficient allegation.  (ECF No. 82, at 16 & n.8).  The point is moot, however, because
for the reasons set forth in Section C.1, *infra*, I find that Indirect Purchaser Plaintiffs have failed
to produce sufficient evidence to raise a genuine issue of material fact as to any alleged deception
by GSK under Arizona's UDTP law.

issue." Id. at 230 (citations omitted).

The Supreme Court has noted that "antitrust violations are essentially tortious acts . . . ." Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 547 (1983) (citation and internal quotation marks omitted).  The gravamen of Indirect Purchaser Plaintiffs' monopolization and UDTP actions is tort.  According to the Restatement, in tort actions, courts must examine the following contacts:

> (a)     the place where the injury occurred,
>
> (b)     the place where the conduct causing the injury occurred,
>
> (c)     the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d)     the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145(2) (1971).  "The applicable law will usually be the local law of the state where the injury occurred."  Id. § 158(2).[14]

The alleged injury central to each of Indirect Purchaser Plaintiffs' state law claims is an

_____

[14]Although antitrust allegations are central to each of Indirect Purchaser Plaintiffs' state law claims, choice of law analysis is issue specific.  Different states' laws may govern different claims within one case.  Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006). Pennsylvania law considers unjust enrichment neither a tort nor a contract action, but rather an equitable remedy that is a form of restitution.  Mitchell v. Moore, 729 A.2d 1200, 1202 n.2 (Pa. Super. Ct. 1999); see also Powers v. Lycoming Engines, 328 Fed.Appx. 121, 126 (3d Cir. 2009) (non-precedential) (applying Pennsylvania choice of law principles to unjust enrichment claim and utilizing Restatement (Second) of Conflict of Laws § 221(2) for the choice of law analysis). While choice of law analysis is issue specific, the particular issues underlying each of these claims are essentially the same.  The parties have not pointed to any material differences between the claims.  Moreover, they do not argue which states—the home states or purchase states—have a greater interest in or more significant contacts to the unjust enrichment claims. Therefore, I find that the choice of law analysis for Indirect Purchaser Plaintiffs' monopolization and UDTP claims is applicable to their unjust enrichment claims as well.

overcharge for Flonase purchases in the purchase states that were either made by or reimbursed

by the Plans.  The Flonase was located in the purchase states, the pharmacies receiving money

for the Flonase were located in the purchase states, and the Plan Members making the purchases

were located, even if only temporarily, in the purchase states.  GSK argues that the Plans' injuries

are too tenuously connected to the state of purchase because the Plans utilized plan

administrators or pharmacy benefit managers in making reimbursements.  Nevertheless, the

transactions at issue were essentially consumer transactions made in the purchase

states—transactions that may have ultimately been covered in part by a third party.  Although the

Plans themselves may have significant contacts with their home states (i.e., place of

incorporation and business), the home states' contacts with the purchases at issue here are

minimal.  Cf. Ferrell, 2004 U.S. Dist. LEXIS 15127, at *13 (explaining that plan members'

purchases of Premarin was "the critical event causing the alleged antitrust injury" asserted by

indirect purchasers).  The purchase states have more contacts, both quantitatively and

qualitatively, with the purchases made here.

        Similarly, the governmental and policy interests underlying the particular claims weigh

strongly in favor of the purchase states.  The state laws at issue here are intended to protect

consumers from being overcharged.  The purchase states have a serious interest in applying their

law to allow consumers (or in this case, the Plans covering the consumers) to recover the money

that they were overcharged in a transaction occurring in their states.  This interest exists

regardless of the citizenship of the consumer making the purchase—the policy behind such laws

is to prevent consumers purchasing goods from being overcharged, and to allow the market

within the state to function efficiently.  See, e.g., Fla. Stat. § 501.202 (explaining that the purpose

of Florida's UDTP statute is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce"); Wis. Stat. § 133.01 ("The intent of this chapter is to safeguard the public against the creation and perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition."). The home states' corresponding interest in preventing the Plans from recovering for an overcharge located in a separate state is simply not as substantial. In fact, GSK has failed to cite any significant policy interest of the home states that would be furthered. Instead, it has focused on the number of contacts each Plan has with its home state contrary to the expansive inquiry required by Hammersmith.

Two recent antitrust cases brought by indirect purchasers against GSK have involved similar state law claims and decisions as to choice of law. See In re Wellbutrin, 2011 WL 3563835, at **4-7; Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC, 737 F. Supp. 2d 380, 390-93 (E.D. Pa. Sept. 7, 2010). In each, the court used Pennsylvania choice of law principles to decide whether to apply the laws of a health benefit plan's home state or the purchase state(s) to the overcharge injury. Both cases concluded the purchase states trumped. In In re Wellbutrin, the court found that the purchase states possessed the more significant contacts and interests with the particular issues in the case:

> The place of purchase is where the relationship between the parties is centered; it is where the transaction with the alleged overcharge actually occurs. A place-of-purchase rule protects justified expectations because an in-state transaction will be governed by the antitrust laws and/or consumer protection laws of that state and not by the chance location of the [Plan's] principal place of business, the location of the [Plan's pharmacy benefit

manager], or an individual purchaser's residence. This approach will also provide
consistent results because all purchases within a state will be treated uniformly. . . . [T]he
Court finds that the weight of the relevant factors in this case favors applying the law of
the place of purchase to govern the transaction.

In re Wellbutrin, 2011 WL 3563835, at *6-7.  Sheet Metal Workers arrived at the same

conclusion after examining the relative interests of the home and purchase states in the

overcharge injury central to the dispute:

> After setting forth the relevant factors under Pennsylvania choice of law
> principles, I concluded that, keeping in mind Pennsylvania's functional approach
> to the choice of law issue, given the fact that the alleged injury occurred in each of
> the fifty states, and given each state's strong interest in protecting its own
> consumers (but a far weaker interest in protecting consumers from other states), it
> is clear (and in the context of this motion the parties do not dispute) that the law
> of a particular state will govern any overcharge injury arising in that state. . . .
> Because the Plans, and their members, suffered injury in the states where they
> purchased Wellbutrin SR, each state has a significant interest in enforcing its
> antitrust laws in light of alleged violations by GSK. Other courts have recognized
> the interest of plan members' states in preventing antitrust and consumer
> protection violations. Pennsylvania choice of law analysis does not clearly require
> application of the Plans' home state laws here, . . . and because there is a
> likelihood of substantial economic impact on the plans and their members in the
> states where they sent reimbursements, I will consider the viability of each
> specific state law claim.

Id. at 392-93 (internal quotation marks omitted).  I am persuaded that the analysis in both cases is

correct.

The named Plaintiffs' claims are best considered under the laws of the states where they

either purchased Flonase, or where Plan Members purchased Flonase and were reimbursed for

those purchases.  Accordingly, I will apply the law of the purchase states to the Indirect

Purchaser Plaintiffs' claims.[15]

---

[15]This determination is without prejudice for Indirect Purchaser Plaintiffs to argue, as they
have done in a footnote in their surreply, that the law of the location of GSK's alleged conduct
(North Carolina) is the more appropriate choice of law designation for the class at class

**C.  Evidence Supporting Indirect Purchaser Plaintiffs' UDTP Claims in Arizona and Florida**

Finally, GSK argues that Indirect Purchaser Plaintiffs have provided no evidence to support two of their claims: (1) Painters' claim of UDTP under Arizona law, and (2) AFL's and IBEW's claim of unfair and deceptive trade practices ("UDTP") under Florida law.

*1.  Painters' Arizona UDTP Claim*

Arizona's UDTP law requires proof of deception.  See Kuehn v. Stanley, 91 P.3d 346, 351 (Ariz. Ct. App. 2004).  GSK argues that Indirect Purchaser Plaintiffs have failed to provide evidence of deception to support Painters' Arizona UDTP claim.  In a prior opinion, I dismissed Painters' Arizona UDTP claim for failure to allege deception, but permitted Indirect Purchaser Plaintiffs to amend their SAC to sufficiently allege deception, noting that it might be possible for them to do so in the following situation:

> The filing of a citizen petition to the FDA requires that the petition include a certification which states, inter alia, that the petition "includes representative data and information known to the petitioner which are unfavorable to the petition." 21 C.F.R. § 10.30 (2009).  If the Plaintiffs had alleged facts to show that the petitions GSK filed made statements that GSK knew were contradicted by data and information, and that GSK knowingly excluded such information, this might be sufficient to allege a misrepresentation [under Arizona's UDTP law].

(ECF No. 82, at 16 n.8).  Indirect Purchaser Plaintiffs' third amended class action complaint ("TAC") included such an allegation, and Indirect Purchaser Plaintiffs now claim that they have provided evidence proving this allegation.

It is unclear what evidence shows that "the petitions GSK filed made statements that GSK knew were contradicted by data and information, and that GSK knowingly excluded such

certification.  See Pls.' Surreply 5 n.4.

25

information."  In a footnote in their surreply, Indirect Purchaser Plaintiffs point to allegations in their TAC that GSK employees believed that the petitions were frivolous and implicated no safety or efficacy issues.  They might be referring to the deposition testimony of former GSK employee Roger Gaby who testified that "[t]here were no safety or efficacy issues raised in the [May Petition] and on this basis alone it was a 'sham.'"  Gaby Dep. 102:15.  Even if I understood Indirect Purchaser Plaintiffs to be pointing to Gaby's testimony, Indirect Purchaser Plaintiffs do not explain whether Gaby held these beliefs when the citizen petitions were filed, such that GSK could have included them in the petitions.  Indirect Purchaser Plaintiffs fail to explain whether GSK knew about Gaby's beliefs such that they "knowingly" excluded them.  They fail to even explain whether withholding one employee's current beliefs about the merits of a petition contradicts any "data or information" in GSK's petitions.  After reviewing the evidence, I find no genuine issue of material fact exists as to whether GSK engaged in deception.  Therefore, I will grant GSK's motion as to Painters' Arizona UDTP claim.

### 2. AFL's and IBEW's Florida UDTP Claim

Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") declares unlawful any "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).  The statute fails to define "unfair methods of competition," "unfair acts," or "deceptive practices," but it does direct that the statute be "construed liberally . . . to protect the consuming public . . . ."  Id. § 501.202.  Furthermore, in interpreting FDUTPA, "great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1)."  Id.  To ascertain whether a FDUTPA

violation has occurred, a court may utilize rules promulgated "pursuant to the Federal Trade Commission Act" and the "standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts."  Id. § 501.203(3).

The Supreme Court of Florida has not defined the elements of a FDUTPA claim. Therefore, Florida appellate court decisions are persuasive in interpreting FDUTPA.  See Fidelity Union Trust Co. v. Field, 311 U.S. 169, 177 (1940) ("An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question."); Pennsylvania v. Brown, 373 F.2d 771, 777-78 (3d Cir. 1967).

A "claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla. Dist. Ct. App. 2006).  GSK moves for summary judgment on Indirect Purchaser Plaintiffs' FDUTPA claim arguing that Indirect Purchaser Plaintiffs have failed to show that a "deceptive" or "unfair" act occurred.

### i.  Deceptive Act under FDUTPA

Under Florida law, "deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."  PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So.2d 773, 777 (Fla. 2003) (internal quotation marks omitted).  Thus, unlike the Arizona law, which only requires that the deceptive act be made "in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby," Ariz. Rev. Stat. Ann. § 44-1522(A), the Florida law requires that the deceptive act itself be likely to mislead the consumer.

27

See generally Davis v. Powertel, Inc., 776 So.2d 971, 974 (Fla. Dist. Ct. App. 2000) ("[T]he question is . . . whether the [allegedly deceptive] practice was likely to deceive a consumer acting reasonably in the same circumstances."); cf. Millenium Cmmc'ns & Fulfillment, Inc. v. Office of Att'y Gen., 761 So.2d 1256, 1264 (Fla. Dist. Ct. App. 2000) (dismissing a Florida UDTP claim because none of the allegedly deceptive information was likely to mislead consumers).

The only deceptive acts that Indirect Purchaser Plaintiffs have produced relate to GSK's citizen petitions. There is no evidence suggesting that the petitions were likely to mislead consumers purchasing Flonase in any way. Indeed, as GSK notes in its motion, Indirect Purchaser Plaintiffs have provided no evidence that any consumer, or even any of the Indirect Purchaser Plaintiffs themselves, read the citizen petitions during the time period at issue in this case. Indirect Purchaser Plaintiffs have thus failed to provide evidence sufficient to raise a genuine issue of material fact as to whether a "deceptive" act occurred under FDUTPA.

### ii. Unfair Act under FDUPTA

The Florida Supreme Court has defined an "unfair practice" broadly as "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." PNR, Inc., 842 So.2d at 777 (citations and internal quotation marks omitted). As previously noted, a court should give great weight to the FTC Act in interpreting FDUTPA. The FTC Act, in defining "unfair," states that the FTC may not "declare unlawful an act or practice on the grounds that such act or practice is unfair unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n). In Mack v. Bristol-Myers Squibb Co., 673 So.2d 100

28

(Fla. Dist. Ct. App. 1996), a Florida appellate court, in considering the FTC Act and Supreme Court precedent, held that "the acts proscribed by subsection 501.204(1) [of FDUTPA] include antitrust violations." 673 So.2d at 104.

Indirect Purchaser Plaintiffs allege that GSK engaged in an unfair act or practice by filing sham citizen petitions with the FDA in order to delay competitive entry of generic Flonase into the market and that, in so doing, GSK was attempting to extend its monopoly and maximize profits at the expense of consumers. Pls. Resp. 1, 3-4. GSK argues that the only potential conduct at issue is "charging an unconscionably high price" because it is "the only conduct [Indirect Purchaser Plaintiffs] could conceivably show to be directed toward them." Mot. Summ. J. in Indirect Purchaser Actions 33. GSK asserts that such conduct does not fall within the Florida Supreme Court's definition of an unfair act, and that, therefore, Indirect Purchaser Plaintiffs' FDUTPA claim should be dismissed.

GSK fails, however, to cite to any Florida case law in support of its argument. It also does not consider the FTC Act, or interpretations from the FTC or federal courts relating to the FTC Act. GSK fails to address, as Indirect Purchaser Plaintiffs point out, that "the acts proscribed by subsection 501.204(1) [of FDUTPA] include antitrust violations." Mack, 673 So.2d at 104. In fact, GSK argues nowhere in its motion that Indirect Purchaser Plaintiffs have failed to show that GSK's conduct constituted an antitrust violation. GSK's reliance on bald assertions is not sufficient to satisfy its initial burden in moving for summary judgment on this issue. Therefore, I will deny GSK motion as to AFL's and IBEW's Florida UDTP claim.

Because Indirect Purchaser Plaintiffs' evidence fails to show that GSK's conduct was deceptive within the meaning of Arizona's UDTP statute, I will grant GSK's motion as Painters'

29

Arizona UDTP claim.  However, I will deny GSK's motion as to AFL's and IBEW's claim of UDTP under Florida law and allow the claim to go forward.

## IV. CONCLUSION[16]

- •     With regard to the monopolization claims, I grant GSK's Motion for Summary Judgment as to IABORI's North Carolina claim and Painters' Iowa claim.  I deny GSK's Motion for Summary Judgment as to Painter's Arizona and Wisconsin claims.

- •     With regard to the UDTP claims, I grant GSK's Motion for Summary Judgment as to IABORI's North Carolina claim and Painters' Arizona and Florida claims.  I deny GSK's Motion for Summary Judgment as to AFL's Florida claim and IBEW's Florida claim.

- •     With regard to the unjust enrichment claims, I grant GSK's Motion for Summary Judgment as to Painters' Iowa claim.  I deny GSK's Motion for Summary Judgment as to Painters' Arizona and Wisconsin claims.

- •     I find that a choice of law analysis favors the application of the laws of the states in which Indirect Purchaser Plaintiffs made or reimbursed Flonase purchases.


s/Anita B. Brody

_____

ANITA B. BRODY, J.

_____

[16]Attached to this opinion is Appendix I, which contains a chart summarizing the results of this opinion.

Copies **VIA ECF** on _____ to:          Copies **MAILED** on _____ to:

**Appendix I**

31

**FLONASE INDIRECT PURCHASERS - RESULT BY CLAIM AND PLAINTIFF**

| Type of Claim | State | Ruling | Explanation | Relevant Plaintiff(s) |
|---|---|---|---|---|
| Monopolization | Arizona | Not dismissed | Genuine issue as to standing and no substantive challenge | Painters |
| Monopolization | Wisconsin | Not dismissed | Genuine issue as to standing and no substantive challenge | Painters |
| Unfair and Deceptive Trade Practice | Florida | Not dismissed | Genuine issue as to standing and GSK failed to satisfy its initial burden in moving for summary judgment re: unfair act | AFL, IBEW |
| Unfair and Deceptive Trade Practice | Massachusetts | Not dismissed | Not challenged in motion | Kehoe |
| Unjust Enrichment | Arizona | Not dismissed | Genuine issue as to standing and no substantive challenge | Painters |
| Unjust Enrichment | Massachusetts | Not dismissed | Not challenged in motion | Kehoe |
| Unjust Enrichment | Wisconsin | Not dismissed | Genuine issue as to standing and no substantive challenge | Painters |
| Monopolization | Iowa | Dismissed | No standing | Painters |
| Monopolization | North Carolina | Dismissed | No standing | IABORI |
| Unfair and Deceptive Trade Practice | Arizona | Dismissed | No genuine issue of deception | Painters |

| Unfair and Deceptive Trade Practice | Florida | Dismissed | No standing | Painters |
|---|---|---|---|---|
| Unfair and Deceptive Trade Practice | North Carolina | Dismissed | No standing | IABORI |
| Unjust Enrichment | Iowa | Dismissed | No standing | Painters |