**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE FLONASE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>Indirect Purchaser Actions | CIVIL ACTION<br><br>No. 08-3301<br><br><br>Hon. Anita B. Brody |
| MEDICAL MUTUAL OF OHIO, on behalf of itself and all others similarly situated,<br><br>         Plaintiff,<br><br>   v.<br><br>SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE plc,<br><br>        Defendant. | CIVIL ACTION<br><br>NO. 12-4212<br><br>Hon. Anita B. Brody |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

Relevant Factual Background .................................................................................................2

I.      Plaintiffs' Claim ........................................................................................................2

II.     History Of The Litigation .........................................................................................2

III.    Settlement Negotiations ............................................................................................3

IV.     The Proposed Settlement ..........................................................................................4

        A.      The Settlement Class....................................................................................5

        B.      Plan of Allocation........................................................................................7

        C.      Notification To Settlement Class Members .................................................7

        D.      Termination..................................................................................................9

        E.      Plaintiffs' Incentive Awards and Attorneys' Fees......................................10

Argument ...............................................................................................................................10

I.      The Court Should Preliminarily Approve The Settlement. ....................................10

        A.      The Settlement Falls Within The Range of Possible Approval ...............10

                1.      The Proposed Settlement Is The Product Of Extensive
                        Arms'-Length Negotiation.............................................................13

                2.      Plaintiffs' Counsel Engaged In Sufficient Discovery
                        To Make An Informed Judgment Concerning The
                        Merits of Their Claims...................................................................15

                3.      The Proponents of The Settlement Are Highly
                        Experienced Antitrust Litigators....................................................16

                4.      The Settlement Amount Is Fair, Reasonable and Adequate
                        In Light of the Risks of Further Litigation....................................16

        B.      Certification of The Proposed Settlement Class Is Appropriate.............18

                1.      The Numerosity Requirement Is Satisfied...................................... 19

2.    The Commonality Requirement Is Satisfied.                              19

3.    The Typicality Requirement Is Satisfied.                               20

4.    The Adequacy of Representation Requirement Is Satisfied.               21

5.    The Requirements of Rule 23(b)(3) Are Met.                             22

C.    The Plan of Notice Should Be Approved. .............................................................24

1.    Notice To TPP Class Members.                                          25

2.    Notice To Consumer Class Members. ......................................................25

3.    The Form and Content of the Notices Should Be Approved. ...................26

D.    A Final Approval Hearing Should Be Scheduled ...................................................27

Conclusion ....................................................................................................................28

# TABLE OF AUTHORITIES

Cases

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997).................................................................................................. 18, 22

*Austin v. Pa. Dep't of Corr.*,
    876 F. Supp. 1437 (E.D. Pa. 1995) .......................................................................... 12

*Cardizem*,
    218 F.R.D. 508 (E.D. Mich. 2003) ........................................................................... 14

*Columbus Drywall and Insulation Inc. v. Masco Corp.*,
    258 F.R.D. 545 (N.D. Ga. 2007).................................................................................. 9

*Curiale v. Lenox Group, Inc.*,
    No. 07-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) .................................... 12

*DeBoer v. Mellon Mortgage Co.*,
    64 F.3d 1171 (8th Cir. 1995) ................................................................................... 24

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010)..................................................................................... 27

*Fidel v. Farley*,
    534 F.3d 508 (6th Cir. 2008) ................................................................................... 24

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)..................................................................................... 11

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ................................................................................... 22

*In re Auto. Refinishing Paint Antitrust Litig.*,
    MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ................................ 13

*In re Cendant Corp. Litig.*,
   264 F.3d 201, n.18 (3d Cir. 2001) ........................................................ 12


*In re Chambers Dev. Securities Litig.*,
   912 F. Supp. 822 (W.D. Pa. 1995) ........................................................ 11


*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) .................... 21, 22, 23, 24


*In re Flonase Antitrust Litig.*,
   284 F.R.D. 207 (E.D. Pa. 2012) ........................................................ 16, 19


*In re General Motors Corp.*,
   55 F.3d 768 (3d Cir. 1985) ........................................................ 11, 12, 13


*In re HealthSouth Corp. Securities Litig.*,
   334 Fed. Appx. 248, n. 4 (11th Cir. 2009) .................................................... 9


*In re Initial Public Offering Securities Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) .............................................................. 9


*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) ................................................................ 24


*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) .................................................... 11, 13


*In re Lupron Mktg. and Sales Practices Litig.*,
   228 F.R.D. 75 (D. Mass. 2005) .............................................................. 19


*In re Mid-Atlantic Toyota Antitrust Litig.*,
   564 F. Supp. 1379 (D.C. Md. 1983) ........................................................ 11


*In re OSB Antitrust Litig.*,
   No. 06-826, 2007 WL 2253425 (E.D. Pa. Aug. 3, 2007) .................................... 19

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104(S.D.N.Y. 1997), ......................................................... 15

*In re Prudential Ins. Co. Sales Litig.*,
   148 F.3d 283 (3d Cir. 1998)........................................................... 19, 27

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
   163 F.R.D. 200 (S.D.N.Y.1995) ........................................................ 12

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52 (D. Mass. 2005)...................................................... 14, 19

*In re Remeron End-Payor Antitrust Litig.*,
   2005 WL 2230314 (D.N.J. 2005) ...................................... 9, 183, 19, 25

*In re Terazosin Hydrochloride*,
   Antitrust Litig., 220 F.R.D 672 (S.D. Fla. 2004) .................................. 21

*In re Traffic Executive Ass'n—Eastern Railroads*,
   627 F.2d 631 (2d Cir. 1980)............................................................. 11

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig,*,
   718 F. Supp. 1099 (S.D.N.Y. 1989)..................................................... 17

*In re Warfarin Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002) ..................................... 9, 12, 14, 15, 19

*In re Wellbutrin XL Antitrust Litig.*,
   2012 WL 1657734 (E.D. Pa. May 11, 2012) ......................................... 17

*Inmates of the Northumberland County Prison v. Reish*,
   No. 08-cv-345, 2009 WL 8670860 (M.D. Pa. Mar. 17, 2009) ................. 20

*Larson v. AT & T Mobility, LLC*,
   687 F.3d 109 (3d Cit. 2012)............................................................. 25

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ................................................................. 20

*Nichols v. SmithKline Beecham Corp.*,
    2005 WL 950616 (E.D. Pa. Apr. 22 2005) ....................................... 14, 19

*Ritti v. U-Haul Int'l., Inc.*,
    05-4182, 2006 WL 1117878 (E.D. Pa. Apr. 26, 2006) ........................... 21

*Senter v. General Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976) ................................................................. 21

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ....................................................... 18, 23, 24

*Thomas v. NCO Fin. Sys.,Inc.*,
    No. 00-5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002) .................... 12

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005) ............................................................... 12

*Vista HealthPlan, Inc. v. Bristol-Myers Squibb Co.*,
    287 F. Supp. 2d 65 (D.D.C. 2003) ........................................................ 25

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .......................................................................... 20

*Walsh v. Great Atlantic & Pacific Tea Co.*,
    726 F.2d 956 (3d Cir. 1983) .................................................................. 11

*Zimmer Paper Prods., Inc. v. Berger & Montague P.C.*,
    758 F.2d 86 (3d Cir. 1985) .................................................................... 25

*Zinberg v. Washington Bancorp, Inc.*,
    138 F.R.D. 397 (D.N.J. 1990) ............................................................... 19

<u>Statutes</u>

28 U.S.C. § 1715(d) ................................................................................ 27

Rules

Fed. R. Civ. P. 23(a) ............................................................................... 18

Fed. R. Civ. P. 23(a)(1) ........................................................................... 19

Fed. R. Civ. P. 23(a)(2) ...................................................................... 19, 20

Fed. R. Civ. P. 23(a)(3) ........................................................................... 20

Fed. R. Civ. P. 23(a)(4) ........................................................................... 21

Fed. R. Civ. P. 23(b)(3) .................................................................. 18, 22, 23

Fed. R. Civ. P. 23(c)(2)(B) .............................................................. 25, 26

Fed. R. Civ. P. 23(e) .................................................................... 1, 10, 24

Plaintiffs[1] submit this brief in support of their Unopposed Motion Seeking Entry Of An Order Preliminarily Approving The Proposed Class Action Settlement (the "Motion"). The Motion seeks preliminary approval of a settlement (the "Settlement") between Plaintiffs and Defendant Smithkline Beecham Corporation d/b/a GlaxoSmithKline, including GlaxoSmithKline LLC and GlaxoSmithKline plc ("Defendant" or "GSK")), concerning the class actions *IBEW-NECA Local 505 Health & Welfare Plan v. SmithKline Beecham Corp.*, No. 08-3301 (E.D. Pa.) ("*In re Flonase*") and *Medical Mutual of Ohio, Inc. v. SmithKline Beecham Corp.*, No. 12-cv-4212 (E.D. Pa.) ("*Medical Mutual*"), which are pending in this Court (the "Actions").[2] The terms of the Settlement are set forth in the Settlement Agreement dated December 6, 2012 attached as Exhibit 1 to the Motion (the "Settlement Agreement").

As detailed below, the Court should preliminarily approve the Settlement because it provides substantial benefits to the Settlement Class, incorporates a fair, reasonable and adequate Plan of Allocation of the Settlement Fund, includes a comprehensive notice plan that is the best means of providing notice under the circumstances, and more than satisfies the requirements of Fed. R. Civ. P. 23(e).

---

[1] Plaintiffs include the A.F. of L.-A.G.C Building Trades Welfare Plan ("AFL"), IBEW-NECA Local 505 Health & Welfare Plan ("IBEW"), Painters District Council No. 30 Health and Welfare Plan ("Painters"), Medical Mutual of Ohio, Inc. ("MMO"), and Andrea Kehoe ("Kehoe"), individually and on behalf of a previously certified class and the proposed settlement class discussed herein. AFL, IBEW, Painters, MMO, and Kehoe constitute the Class Representatives. Settlement Agreement at p. 1.

[2] Pursuant to Fed. R. Civ. P. 42, and as part of the proposed settlement, IBEW-NECA Local 505 Health & Welfare Plan v. SmithKline Beecham Corp., No. 08-3301 (E.D. Pa.) ("In re Flonase") and Medical Mutual of Ohio, Inc. v. SmithKline Beecham Corp., No. 12-cv-4212 (E.D. Pa.) ("Medical Mutual") should be consolidated into docket no. 08-3301 and the Clerk of this Court directed to close case no. 12-4212.

I.  Plaintiffs' Claims

Plaintiffs are consumers and third-party payors ("TPPs") who purchased, paid for and/or reimbursed for fluticasone propionate nasal spray, including both branded Flonase and its generic equivalents. Both *In re Flonase* and *Medical Mutual* seek recovery of damages on behalf of end-payors claiming that Defendant monopolized the market for branded and generic fluticasone propionate under the laws of states throughout the country.

Plaintiffs allege that Defendant caused the class to pay more for branded and generic Flonase through unlawfully delaying the sale of generic fluticasone propionate after the period of exclusivity expired on May 14, 2004. Plaintiffs allege that Defendant filed successive Citizen Petitions with the United States Food and Drug Administration ("FDA") in order to exclude generic competition and improperly extend its Flonase monopoly. In addition, Plaintiffs allege that Defendant impeded the generic from entering the market by strategically drafting and causing a monograph for fluticasone propionate to be submitted to the USP, knowing that the FDA would require any generic to meet those specifications.

II.  History Of The Litigation

The *In re Flonase* suit is a consolidation of four suits filed by union health and welfare funds and an individual challenging Defendant's conduct.[3] While Plaintiffs sought a nationwide class under North Carolina law, as well as a class under many state laws, this Court's various

---

[3] Originally, four suits were filed in this district challenging Defendant's conduct. On October 1, 2008, this Court consolidated *IBEW-NECA Local 505 Health & Welfare Plan v. GSK*, 08-CV-3301, *Painters District Council No. 30 Health and Welfare Fund v. GSK*, 08-CV-3560, *A.F. of L. A.G.C. Building Trades Welfare Plan*, 08-CV-4074, *International Association of Bridge, Structure, Ornamental and Reinforcing IronWorkers Local No. 79 Health Fund v. GSK*, 08-CV-3814*, and on September 3, 2008, the Amended Complaint was filed. Since the filing of that complaint, the Court has dismissed the claims of IABORI, and Plaintiffs voluntarily dismissed Sheet Metal Workers Local 441 Health and Welfare Plan and MC-UA Local 119 Health and Welfare Plan.

ruling permitted a certified class to assert claims for monopolization under Arizona and Wisconsin law, unfair and deceptive trade practice under Florida and Massachusetts law, and unjust enrichment under Arizona, Massachusetts, and Wisconsin law.

In *In re Flonase* no less than three defense motions for summary judgment were briefed and decided. Two motions to dismiss were briefed and decided. Some of these decisions reduced the scope of the case.

A three-day class certification hearing was held at the end of February, 2012. As a result of that hearing, on June 18, 2012, this Court certified an end-payor class with various claims for four states (Arizona, Florida, Massachusetts and Wisconsin) for the Class Period August 2004 through March 2006.

Since June, Plaintiffs have been preparing for trial. Trial witnesses had been designated, trial exhibits had been designated and objections lodged, deposition designations had been made and objections lodged, motions *in limine* had been fully briefed, jury instructions had been prepared, and final trial memoranda had been filed. Initially, the five to six week trial was set to begin in October 2012.

*Medical Mutual* was filed on July 24, 2012. *Medical Mutual* seeks recovery of damages on behalf of end-payors for Defendant's monopolization of the market for branded and generic fluticasone propionate under the antitrust laws of the *Illinois Brick* repealer states, under the consumer fraud and unfair trade practices statutes of the states that recognize monopolization as an unfair or deceptive trade practice, and under the laws of states that allow unjust enrichment claims for monopolization.

III.     Settlement Negotiations

All negotiations regarding settlement in this case have been conducted at arm's length, in good faith, and absolutely free of any collusion. Declaration of Marvin A. Miller In Support of

Indirect-Purchaser Plaintiffs' Motion For Preliminary Approval of Settlement ("Miller Decl.") at ¶¶ 4-13, attached to the Motion as Exhibit 2. On June 6, 2012, the parties mediated with a private mediator but that effort was unavailing. *Id*. at ¶ 5. Once this Court set a trial date, the parties, while preparing for trial, engaged in protracted and persistent negotiations in the Fall 2012. *Id*. The trial was rescheduled to begin in January 2013, which allowed the parties to continue their negotiations. *Id*. Finally, the Settlement was agreed to in principle on November 14, 2012. *Id*. at ¶ 7. But the negotiations did not stop at that point. *Id*. The Settlement Agreement was then negotiated with fervor, until ultimately on December 6, 2012, the parties signed the Settlement Agreement, which is now before the Court and for which preliminary approval is sought. *Id*. at 7.

During that period, in addition to discussions with Defendant, Class Counsel initiated discussions with more than 30 large commercial health insurers that had filed a Writ of Summons against Defendant in the Philadelphia Court of Common Pleas. Miller Decl. at ¶ 8. These large health insurers generally have separate representation and usually opt out of class settlements in pharmaceutical class actions and reach separate direct (or non-class) settlements with defendants in cases similar to the case at hand. *Id*. These entities are generally referred to as "Individually Represented Settling Health Plans" or "Settling Health Plans" (hereafter "SHPs"), and are entities that would be members of the Settlement Class, but for their decision to exclude themselves from the Settlement Class. *Id*.

Class Counsel here have substantial experience in the negotiation of pharmaceutical industry class settlements, including settlements involving SHPs. Miller Decl. at ¶ 9.

IV.     The Proposed Settlement

The Settlement provides for a cash payment from Defendant of $35,000,000 to the Settlement Class (the "Settlement Fund"). Miller Decl. at ¶ 6. Concurrent with the settlement

negotiations with Defendant, Class Counsel negotiated with counsel for the SHPs, concerning the SHPs' share of the allocation to Third Party Payors ("TPPs"). Id. at ¶ 10. The SHPs represented that, in the aggregate, they provide or administer prescription drug and health benefits to at least 60 percent of the covered lives privately insured in the United States. *Id*. Based on this representation, Class Plaintiffs, through Class Counsel, and the SHPs, through SHP counsel, after vigorous arm's length negotiations, agreed to an initial payment to the SHPs from Defendant and a reconciliation process, which is set forth in the Plan of Allocation. *Id*. A copy of the Plan of Allocation is attached as Exhibit 5 to the Motion, and is discussed further below.

The SHP's represent that, pursuant to a separate, private settlement agreement with Defendant, Defendant also agreed to pay the SHPs $11,000,000.00 as an initial payment. *Id*. at ¶ 11. The SHPs agreed that, of the $11 million they received from Defendant, $1,000,000.00 would be available for fees to Class Counsel for having created the benefits to be received by the SHPs and/or under certain conditions for payment to the Settlement Class, leaving $10 million as the SHP Group Initial Payment. *Id*.

In exchange for Defendant's cash payment of the Settlement Fund, Plaintiffs agree to provide Defendant with a release of claims relating in any way to the alleged conduct that gave rise to this action. Settlement Agreement at ¶ 11. Final approval of the Settlement will result in the dismissal with prejudice of Plaintiffs' claims against Defendant. *Id*. at ¶ 4.

A.     The Settlement Class

The proposed settlement class (the "Settlement Class") is defined as:

> All persons throughout the United States and its territories who purchased and/or paid for, in whole or in part, fluticasone propionate nasal spray, whether branded Flonase or its AB-rated generic equivalents, intended for the consumption of themselves, their family members and/or household members, and all Third Party Payor entities throughout the United States

and its territories that purchased, paid for, administered and/or reimbursed for fluticasone propionate nasal spray, whether branded Flonase or its generic equivalents, intended for consumption by their members, employees, plan participants, beneficiaries or insureds.

The applicable time period for the Settlement Class is May 19, 2004 through March 31, 2009.

Third Party Payors are all health insurance companies, healthcare benefit providers, health maintenance organizations, self-funded health and welfare plans, and any other health benefit provider and/or entity that contracts with a health insurer acting as a third party administrator to administer their prescription drug benefits. These payors include such entities that may provide prescription drug benefits for current or former public employees and/or retirees, but only to the extent that such entity was at risk for the cost of the payment(s). For purposes of this definition, an entity "paid for" fluticasone propionate nasal spray (branded Flonase and/or its equivalents) if it paid some or all of the purchase price, or reimbursed any part of the purchase price paid by their members, employees, insureds, participants or beneficiaries.

Settlement Agreement at ¶ 1.

Excluded from the Settlement Class are: (1) Defendant and its officers, directors, management, employees, predecessors-in-interest, successors-in-interest, assignees or affiliates, and subsidiaries; (2) the United States and/or State governments and their agencies and departments, except to the extent they purchased fluticasone propionate nasal spray (branded Flonase and/or its generic equivalents) for their employees or others covered by a government employee health plan; (3) all entities who purchased fluticasone propionate nasal spray (branded Flonase and/or its generic equivalents) directly from Defendant or its affiliates or purchased fluticasone propionate nasal spray (branded Flonase and/or its generic equivalents) for resale, to the extent and solely to the extent of such purchase as a direct purchaser or for resale; (4) any judge or special master who has presided over the Actions; and (5) the SHPs. *Id.*

**B.   Plan of Allocation**

A detailed Plan of Allocation is attached to the Motion as Exhibit 5.   As more fully explained in the Plan of Allocation, the Settlement Fund will be distributed to TPP and Consumer Class Members who submit timely, valid claims based on their allowed claim amounts.  Plan of Allocation at ¶ 2.  After payment from the Settlement Fund of Court-awarded attorneys fees, reimbursement of expenses, and incentive awards to class representatives, and after any SHP payments discussed below, each TPP and Consumer Class Member will receive a percentage of the remaining Settlement Fund that is equal to that Class Member's allowed claim amount divided by the total of all Consumer and TPP allowed claim amounts.  *Id.*

Under the Plan of Allocation, the SHPs may pay money from their separate settlement to the Settlement Class, or may receive some additional payment from the Settlement Class.  Plan of Allocation at ¶ 4.  The Plan of Allocation provides a mechanism for a reconciliation to insure that class TPPs' and SHPs' recovery is approximately proportionate net of attorneys' fees. Miller Decl. at ¶ 12.  Although the SHPs are participants in the private SHP Agreement, SHPs must submit their claims information to the Claims Administrator.  *Id.* After all class members' and SHPs' claims are submitted, a formula will be applied to determine whether the SHPs must pay any of the SHP Group Initial Payment back to the Class, or whether the SHPs may receive a distribution from the Class.  *Id.* The formula takes into account the amount SHPs have already received and the percentage of claims they represent, and allocates to them their share of attorneys' fees, expenses, incentive awards, and notice and administration costs associated with the settlement.  *Id.*

**C.  Notification To Settlement Class Members**

The Declaration of Katherine Kinsella ("Kinsella Decl."), which is attached as Exhibit 4 to the Motion, sets forth the proposed notice program (the "Notice Plan") relating to the

Settlement. The Notice Plan was designed to reach the greatest practicable number of members of the Settlement Class. Kinsella Decl. at ¶ 9. Kinsella is a recognized leader in the legal notice field. *Id*. at ¶ 6-7.

The Notice Plan has direct mail, media publication, and internet components intended to reach potential Class Members. Kinsella Decl. at ¶ 11. Direct written postcard notice will be mailed to all entities included in a proprietary TPP database. *Id*. at ¶ 12. The direct mail notice program will utilize Rust's Consulting, Inc.'s proprietary list of approximately 39,495 identifiable insurance companies, healthcare and welfare funds, employee benefit funds, third-party administrators, pharmacy benefit managers, and other record keepers, as well as their lawyers, accountants, and other representatives. *Id*. at ¶ 13.

Additional written notice will be published in a variety of print publications specifically selected to reach both TPP and consumer Class Members, including newspaper supplements, consumer magazines, a trade publication, and publications in U.S. territories and possessions. Kinsella Decl. at ¶ 14 - 22.

Targeted internet banner advertisements also will be published on a rotating basis for 30 days on a wide range of websites through three major and well-established ad networks. Kinsella Decl. at ¶ 23. All print advertising will carry a toll-free number and a website address for potential Class Members to request more information. Kinsella Decl. at ¶ 25.

Copies of the Notice Plan's recommended Detailed Notices, Postcard Notice, and Publication Notices are attached to the Kinsella Declaration as Exhibits 4, 5 and 6, respectively. These notice forms are designed to be easily understood and include information concerning: the nature of the action and Plaintiffs' claims; the definition of the Settlement Class; the class claims, issues, or defenses; that a Class member may object to the Settlement Agreement; that any

Settlement Class member may appear in the action and be heard; that the Court will exclude from the Class any member who requests exclusion and the time and manner of requesting exclusion; the binding effect of a class judgment on members of the Class, as well as a toll-free number and web address to obtain more information and file a claim. Kinsella Decl. at ¶¶ 30-35.

### D. Termination

Under the Settlement Agreement, Defendant and the Plaintiffs' counsel each has the right to terminate the settlement if the Court declines to finally approve the Settlement, if such approval is reversed, vacated, or otherwise materially modified on appeal, if the Court does not enter the final judgment in substantially the form provided for in the Settlement Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is reversed, vacated or materially modified. Settlement Agreement at ¶ 13. In addition, Defendant has the right to withdraw from the Settlement Agreement on the terms contained in a submission filed with this Court under seal and solely for *in camera* review. *Id.* at ¶ 12; *see In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, at *18 (D.N.J. 2005) ("[i]nformation regarding conditions that may terminate a settlement need not be detailed in the notice to the class"); *In re Warfarin Antitrust Litig.*, 212 F.R.D. 231, 253 (D. Del. 2002) (recognizing as "irrelevant" the bases upon which a defendant to a class action can withdraw from the proposed settlement); *see also In re HealthSouth Corp. Securities Litig.*, 334 Fed. Appx. 248, 250, n. 4 (11th Cir. 2009) (recognizing that the details of a "blow provision" are "typically not disclosed and [the related agreement] is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out"); *Columbus Drywall and Insulation Inc. v. Masco Corp.*, 258 F.R.D. 545, 560 (N.D. Ga. 2007) (refusing to make public side-agreements that had been submitted for *in camera* review and which did not reflect that the "plaintiffs had bargained away rights of the class in return for advantages of others"); *In re Initial*

*Public Offering Securities Litig.*, 226 F.R.D. 186, 204-05 (S.D.N.Y. 2005) (denying a party's request to review agreements that had been submitted solely for the court's *in camera* review and which did not affect rights of class members).

### E.  Plaintiffs' Incentive Awards and Attorneys' Fees

Pursuant to the Settlement Agreement, Plaintiffs' counsel may apply for incentive awards to the Class Representatives. Settlement Agreement at ¶ 10.  Plaintiffs agree to look solely to the Settlement Fund for the satisfaction against Defendant of any distribution to Plaintiffs' counsel, including for attorneys' fees, reimbursement of reasonable costs and expenses incurred in the prosecution of the Class Action, as well as with respect to the payment of incentive awards to the Class Representatives.  *Id.*

ARGUMENT

I.        The Court Should Preliminary Approval The Settlement.

### A.        The Settlement Falls Within The Range of Possible Approval.

Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must obtain the court's approval.  *See* FED. R. CIV. P. 23(e).  Approval of a class action settlement involves a two-step process.  First, counsel submits the proposed terms of settlement and the court makes a preliminary fairness evaluation.  *See Manual for Complex Litigation* § 21.632 (4th ed. 2004) (hereafter "*Manual*"); s*ee also* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:25, at 38-39 (4th ed. 2002) (hereafter, "*Newberg on Class Actions*") (endorsing two-step process).  If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and

evidence may be presented in support of and in opposition to the settlement.  *See Manual* § 21.633.

Authorization to disseminate notice is recognition by the Court that the settlement is in the range of possible approval.  *See, e.g., In re Chambers Dev. Securities Litig.,* 912 F. Supp. 822, 827 (W.D. Pa. 1995).  It is akin to "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full scale hearing as to its fairness."  *In re Traffic Executive Ass'n—Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).  A settlement falls within the "range of possible approval" under Rule 23 if there is a conceivable basis for presuming that the standard applied for final approval will be satisfied.  The standard for final approval of a settlement is that the settlement is fair, adequate, and reasonable to the class.  *Walsh v. Great Atlantic & Pacific Tea Co.,* 726 F.2d 956, 965 (3d Cir. 1983).

When deciding preliminary approval, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement, and the judge must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate."  *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D.C. Md. 1983); *see also In re General Motors Corp.*, 55 F.3d 768, 785 (3d Cir. 1985) (holding that the "preliminary determination establishes an initial presumption of fairness."). That determination must await the final hearing, at which the fairness, reasonableness, and adequacy of the settlement is assessed.  *See In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).[4]

---

[4]     The factors considered for final approval of a class settlement as "fair, reasonable and adequate" include: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in

Thus, in evaluating a settlement for preliminary approval, the court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute. *Curiale v. Lenox Group, Inc.,* No. 07-1432, 2008 WL 4899474, *4 (E.D. Pa. Nov. 14, 2008) (quoting *Thomas v. NCO Fin. Sys.,Inc*., No. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002)). Instead, the court need only determine whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and whether it appears to fall within the range of possible approval." *Thomas*, 2002 WL 1773035, at *5 (*citing In re Prudential Sec. Inc. Ltd. P'ship Litig.,* 163 F.R.D. 200, 209 (S.D.N.Y.1995)).

There is an initial presumption of fairness when the court finds: (1) a proposed settlement was negotiated at arm's length; (2) there was sufficient discovery; and (3) counsel is experienced in similar litigation. *In re General Motors Corp.*, 55 F.3d at 786; *In re Cendant Corp. Litig.*, 264 F.3d 201, 232, n.18 (3d Cir. 2001); *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 235 (D.N.J. 2005). In addition, in reviewing the proposed settlement, the court should consider that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *Warfarin*, 391 F.3d at 535; *see also In re Gen. Motors*, 55 F.3d at 784 ( "the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *Austin v. Pa. Dep't of Corr*., 876 F. Supp. 1437, 1455 (E.D. Pa. 1995) ("the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy of encouraging settlements to 'an overriding public interest'").

---

light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

Here, application of these factors demonstrates that the Settlement should be preliminarily approved and an "initial presumption of fairness" established.  *In re Linerboard*, 292 F. Supp. 2d at 638 (*citing In re Gen. Motors Corp.*, 55 F.3d at 785). *See also Newberg on Class Actions* § 11:41 (noting that courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.")

### 1. The Proposed Settlement Is The Product Of Extensive Arms'-Length Negotiation.

First, the negotiations in *In re Flonase* clearly occurred at arm's-length.  It was not until after four years' of active litigation, full of attacks on the pleadings, dispositive motion practice, full class certification proceedings, the exchange of pre-trial submissions, including motions *in limine*, exhibit lists, witness lists, and deposition designations, and the Court's setting of a trial date that the parties even engaged in meaningful settlement discussion.  Settlement negotiations were complex, hard-fought, extended over months, and were time consuming.

Settlements negotiated by experienced counsel that result from arm's length negotiations are entitled to deference.  *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *6 (E.D. Pa. May 11, 2004); *see also In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 640 ( "[a] presumption of correctness is said to attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.").  This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).  By focusing on the negotiation process, the court can avoid the burden of an unduly extended inquiry into the claims asserted and result achieved by plaintiffs.  *In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314 at *16.

The Court appointed Marvin A. Miller, Lori A. Fanning, and Michael M. Buchman as Interim Class Counsel in *In re Flonase*, and, later, when it certified a class, again approved these attorneys as Co-Lead Counsel. Miller Decl. at ¶ 3. Mr. Miller and Ms. Fanning are also counsel in *Medical Mutual*. *Id*. These counsel have significant class action and antitrust experience. *Id*. The settlement is the product of bona fide and arm's length negotiations commencing after extensive litigation over the major legal issues in the case. Id. at ¶¶ 4-12.

In addition, in order to provide a structural safeguard for the rights of individual consumers and TPPs, Class Counsel appointed separate counsel for each group to allocate the proceeds of any settlement between the two groups. *See* Miller Decl. at ¶¶ 14-17. This approach, first recognized by the District Court in *Warfarin* and affirmed by the Third Circuit, has been followed by numerous courts addressing allocation of settlement proceeds between consumers and TPPs. *See, e.g., Nichols v. SmithKline Beecham Corp.*, 2005 WL 950616, *17, *27 (E.D. Pa. Apr. 22 2005); *Cardizem*, 218 F.R.D. 508, 515 (E.D. Mich. 2003); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 76 (D. Mass. 2005).[5] The Allocation Counsel independently determined that a single settlement fund should be allocated *pro rata* based upon the recognized claims, rather than having the fund divided into separate consumer and TPP sub-funds. Declaration of Kim West, Esq. and Deborah Gross, Esq. As Allocation Counsel In Support of The Allocation Of Settlement Proceeds at ¶ 2, attached to the Motion as Exhibit 3.

Accordingly, there can be no question that the negotiations were highly adversarial, and always at arms' length.

---

[5] *Warfarin*, 212 F.R.D. at 250 ("The existence of separate consumer and TPP counsel provides adequate structural protections to assure that differently situated plaintiffs negotiate for their own unique interests."), *aff'd*, 391 F.3d at 533 ("[W]e agree with the District Court that any potential for conflicts of interest between and among consumers and TPPs that may have arisen prior to and during the settlement negotiations were adequately represented by the presence of separate counsel for consumers and TPPs.").

**2.** **Plaintiffs' Counsel Engaged In Sufficient Discovery To Make An Informed Judgment Concerning The Merits of Their Claims.**

The stage of the proceedings and the amount of discovery completed at the time of settlement is relevant to the parties' knowledge of the strengths and weaknesses of the claims in the case, and consequently affects the determination of the settlement's fairness. "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537 (citation omitted); *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Class Counsel here had a deep appreciation of the merits before reaching the proposed settlement. At the time that Class Counsel agreed to the Settlement, Class Counsel had completed all fact and expert discovery in *In re Flonase*, including, *inter alia*, having reviewed and analyzed over 75,000 documents (2,676,608 pages of documents), taken or defended over 50 depositions, and reviewed and either supported or deconstructed nineteen expert reports. Miller Decl. at ¶ 29. Class Counsel had also completed full briefing on three motions for class certification, all of the motions for summary judgment, *Daubert* motions and the pending motions in limine. *Id.* at ¶ 30. In order to adhere to the Court's rigorous schedule, Class Counsel prepared for trial which was to begin January 10, 2013. *Id.* at ¶ 31. In that regard, Class Counsel prepared an extensive pre-trial memorandum which included, among other materials, deposition designations, evidence lists of documents, witnesses, jury voir dire and jury instructions. *Id.* at ¶ 31. Class Counsel had also prepared mediation briefs on multiple issues. *Id.* at ¶ 32. Class Counsel had also engaged in literally dozens of settlement arguments and negotiations with the Defendant. *Id.* at ¶ 32.

In sum, all fact and expert discovery had been completed and substantial preparations for trial had been made for the impending trial when Class Counsel exercised their judgment to settle. *Id.* at ¶ 33. Plaintiffs' analysis of the record is more than adequate to support this settlement.

### 3. The Proponents of The Settlement Are Highly Experienced Antitrust Litigators.

As demonstrated in the moving papers for appointment as Interim Co-Lead Counsel and in connection with the motion for class certification, Plaintiffs' Counsel have considerable experience in pharmaceutical industry antitrust class actions. The Court has previously determined that Plaintiffs' Counsel are adequate representatives. *See In re Flonase Antitrust Litig.*, 284 F.R.D. 207 (E.D. Pa. 2012). Given this experience, Plaintiffs' Counsel have developed in-depth knowledge of the pharmaceutical industry and the legal issues that arise in these cases. The important point for preliminary approval is that experienced and competent counsel believe that the proposed settlement is fair, reasonable and adequate.

### 4. The Settlement Amount Is Fair, Reasonable and Adequate In Light of the Risks of Further Litigation.

The proposed settlement should be presumed to be fair and reasonable in light of the significant risks that Class Plaintiffs face and the particular defenses asserted by Defendant in this case. This case was particularly complex. Plaintiffs claim that Defendant sought to keep generic Flonase off the market through filing citizen petitions with the FDA. These citizen petitions raised highly complicated and technical matters. In order to establish liability with regard to a particular citizen petition, the Defendants continued to take the position that under the Court's rulings, the Plaintiffs would be required to show, among other things, that every request in that petition was objectively baseless, and that that citizen petition proximately caused the FDA to delay approving generic fluticasone propionate nasal spray ANDAs, and that the FDA's

delay, as opposed to another factor, prevented the generic from coming to market as opposed to other issues. Even after prevailing on these issues, Plaintiffs would need to establish how much of the delay between when Flonase went off patent and when Roxane began selling generic fluticasone propionate was attributable to Defendant's citizen petition.

The difficulty of proving all of these elements is illustrated by *In re Wellbutrin XL Antitrust Litig.,* 2012 WL 1657734 (E.D. Pa. May 11, 2012), another indirect purchaser class action against Defendant and Biovail which sought damages for the delay of competing generics. In that case, after class certification and discovery, Judge McLaughlin granted partial summary judgment against the plaintiffs, finding that they had failed to produce evidence sufficient to raise an issue of material fact that the Biovail's patent infringement lawsuits against generic manufacturers and citizen petitions constituted sham litigation under *Noerr-Pennington*. Because there is arguably no direct evidence here that the FDA delayed approval of Roxane's generic because of allegedly baseless arguments made by Defendant, as opposed to internal disputes or issues regarding Roxane's actions and Roxane's responses to the FDA, or that the FDA considered Defendant's arguments to be baseless, a jury could find that Defendant's citizen petitions are not a basis for finding Defendant liable here, either because they were not shams or because they did not proximately cause the injury.

Significant disputed issues surround proof of market power as well. While Plaintiffs believe that they could prove Defendant's market power in two ways, Defendant's expert contends that Defendant lacked market power because, among other arguments, he claims the relevant market included a number of substitute products.

These issues illustrate that this case is far from a slam dunk. There are significant factual questions which could be decided against the Plaintiffs at trial and lead to a defense verdict.

Given the risks associated with further litigation, the settlement recovery is an excellent result. *See In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) ("Dollar amounts are judged not in comparison with possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.").

In light of the significant risk and uncertainty of litigation, weighed against the substantial benefits the settlement will provide to Plaintiffs, the proposed resolution is a fair, reasonable and adequate compromise of the issues in dispute and should be preliminarily approved. The record shows that the proposed settlement is sufficiently within the range of fairness, adequacy and reasonableness to warrant providing notice to the Class.

**B.     Certification of The Proposed Settlement Class Is Appropriate.**

The benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011). As such, Plaintiffs seek the certification of the Settlement Class.[6]

The four requirements of Fed. R. Civ. P. 23(a) are numerosity, commonality, typicality, and adequacy. In addition, Plaintiffs seek certification of the Settlement Class pursuant to Rule 23(b)(3), which provides that certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." FED. R. CIV. P. 23(b)(3).

---

[6]     Defendant has agreed to the certification of the Settlement Class for settlement purposes only.

As discussed below, these requirements are met for purposes of settlement in this case. This Court should follow the lead of the many courts that have certified indirect purchaser settlement classes asserting similar claims against drug manufacturers based upon alleged anticompetitive practice.[7] In fact, class certification was extensively briefed and argued before this Court. In certifying the indirect purchaser class in *In re Flonase,* 284 F.R.D. 207 (E.D. Pa. 2012), this Court has already found that Rule 23(b)(3) was satisfied for a litigation class.

### 1. The Numerosity Requirement Is Satisfied.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Generally, if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40, the numerosity requirement of Rule 23(a) has been met." *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253425, at *3 (E.D. Pa. Aug. 3, 2007); *see also, Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 405 (D.N.J. 1990) ("It is proper for the court to accept common sense assumptions in order to support a finding of numerosity."). Here, this requirement is plainly satisfied as the Settlement contemplates the certification of a class of tens of thousands of consumer class members and hundreds of TPP class members. Numerosity is therefore easily satisfied.

### 2. The Commonality Requirement Is Satisfied.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "A finding of commonality does not require that all class members share identical claims, and factual differences among the claims of the putative class members do not defeat certification." *In re Prudential Ins. Co. Sales Litig.*, 148 F.3d 283, 310 (3d Cir. 1998). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where

---

[7] *See*, *e.g.*, *Warfarin*, 212 F.R.D. at 246-52, *aff'd*, 391 F.3d 516, 531 (3d Cir. 2004); *Remeron*, 2005 WL 2230314 at *12; *Nichols*, 2005 WL 950616 at *7; *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 87-92 (D. Mass. 2005); *Relafen*, 231 F.R.D. at 67-71.

the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556.

In this case, there are a myriad of common questions of law and fact, including whether: (1) Defendant unlawfully monopolized or attempted to monopolize the market for Flonase; (2) Defendant unlawfully possessed or extended its monopoly power over the Flonase market; (3) Defendant's actions caused the price of Flonase to be maintained at supra-competitive levels; (4) Defendant's citizen petitions were objectively baseless and intended to prevent generic entry; (5) the class members suffered antitrust injury; and (6) Defendant was unjustly enriched to the detriment of the class members. Resolving the allegations surrounding Defendant's alleged conduct in delaying generic entry will resolve issues that are "central to the validity of each of the claims in one stroke." *Id.* at 2551. Commonality is therefore satisfied.

### 3. The Typicality Requirement Is Satisfied.

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. FED. R. CIV. P. 23(a)(3). "If the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established." *Inmates of the Northumberland County Prison v. Reish*, No. 08-cv-345, 2009 WL 8670860, at *19 (M.D. Pa. Mar. 17, 2009) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001)).

Here, Plaintiffs claim that the same unlawful conduct injured both the class representatives and the absent class members. Plaintiffs' claims for monopolization, violations of

unfair trade practices acts, and unjust enrichment arise from an identical course of conduct—Defendant's allegedly monopolistic "brand maturation strategy." Plaintiffs allege that Defendant implemented this strategy without reference to individual purchasers, and all members of the proposed class seek to recover for the resulting overcharge injury, or unjust enrichment at their expense, based on the same legal theories. *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D 672, 688 (S.D. Fla. 2004) ("[I]f one class representative is able to prove that Defendants' alleged anticompetitive acts caused an overcharge for [the brand drug], or that Defendants were unjustly enriched at Indirect Purchaser Plaintiffs' expense, such proof will likewise prove the case on liability for every other class member"). The typicality requirement is therefore met.

### 4.      The Adequacy of Representation Requirement Is Satisfied.

The final requirement of Rule 23(a) is that "the representative part[y] will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig*., No. 3:08-MD-01998, 2009 WL 5184352, at *4 (W.D. Ky. Dec. 22, 2009) (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)).

In addressing the adequacy of the proposed class representative(s), district courts examine whether he or she "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Ritti v. U-Haul Int'l., Inc.*, 05-4182, 2006 WL 1117878, at *5 (E.D. Pa. Apr. 26, 2006). Here, all of the Class Representatives are adequate, in that they purchased, paid, or provided reimbursement for, in whole or in part,

fluticasone propionate nasal spray, whether branded Flonase or its AB-rated generic equivalents and were allegedly injured in the same manner based on the Defendant's alleged anticompetitive conduct. They have been in constant communication with their attorneys regarding the litigation, and with the exception of MMO, have each actively participated in the discovery in this case and been deposed.

With respect to the adequacy of Plaintiffs' Counsel, they have invested considerable time and resources into the prosecution of this action. They have a wealth of experience in litigating complex class action lawsuits and were able to negotiate an outstanding Settlement for the Class in this case. Moreover, this Court already found them to be qualified. The adequacy requirement is, accordingly, met here.

### 5.     The Requirements of Rule 23(b)(3) Are Met.

Plaintiffs seek to certify the settlement class under Rule 23(b)(3), which has two components: predominance and superiority. *See* Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.'" *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *6 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996)). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 618 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

With respect to predominance, the Third Circuit has recently reiterated that the focus of the "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan,* 667 F.3d at 298. With respect to superiority, the Court "considers whether or not a class action is a superior method of fairly and efficiently adjudicating the controversy." *Id.* at 569. Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

Here, there are several common questions of law and fact that predominate over any questions that may affect individual class members. For example, were this case to proceed, the primary issue would be whether Defendant engaged in unlawful anticompetitive conduct that resulted in injury and damages to individuals or entities that purchased, paid for, or provided reimbursement for, in whole or in part, fluticasone propionate nasal spray, whether branded Flonase or its AB-rated generic equivalents. This is an issue subject to "generalized proof," and is a "question that is common to all class members." *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *6 ("the proof required [must focus] on Defendant's conduct, not on the conduct of individual class members"); *accord, Sullivan*, 667 F.3d at 299. Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3)—that a class action be superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied. *See*

FED. R. CIV. P. 23(b)(3).  The Settlement Agreement, plan of allocation, and Plan of Notice, provide members of the settlement class with the ability to obtain prompt, predictable, and certain relief, and contains well-defined administrative procedures to assure due process.  This includes the right of any class member dissatisfied with the Settlement to object to it, or to exclude themselves.  The Settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Defendant, by going forward with this case as a class action.  And because the parties seek to resolve this case through a settlement, any manageability issues that could have arisen at trial are marginalized.  *Sullivan*, 667 F.3d at 302-303; *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 269 (3d Cir. 2009).

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

### C.     The Plan of Notice Should Be Approved.

Under FED. R. CIV. P. 23(e), class members who would be bound by a settlement are entitled to reasonable notice of it before the settlement is ultimately approved by the Court.  *See* Fed. Jud. Ctr., *Manual for Complex Litig.* Fourth, § 30.212 (2004).  And because Plaintiff here seeks certification of the Settlement Class under Rule 23(b)(3), "the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts."  *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *12 (*citing* Fed. R. Civ. P. 23(c)(2)(B)).  In order to satisfy these standards and "comport with the requirements of due process, [the] notice must be 'reasonably calculated to reach interested parties.'"  *Id.* (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)); *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1176 (8th Cir. 1995) ("Notice of a settlement proposal need only be as directed by the

district court... and reasonable enough to satisfy due process"). The notice procedures of the Notice Plan, summarized above, are the best means of providing notice under the circumstances.

### 1. Notice To TPP Class Members.

"It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause." *Zimmer Paper Prods., Inc. v. Berger & Montague P.C.*, 758 F.2d 86, 90 (3d Cir. 1985). In this case, direct mail to the comprehensive list of approximately 40,000 addresses found in the proprietary Rust database, combined with publication notice in an industry trade journal, is the best notice practicable under the circumstances for TPPs. *See, e.g.*, *Remeron*, 2005 WL 2230314, at *13 (approving a similar TPP notice plan, including mailings "to all potential TPP class members included in CCS' [Rust's predecessor's] proprietary TPP mailing database"); *Vista HealthPlan, Inc. v. Bristol-Myers Squibb Co.*, 287 F. Supp. 2d 65, 66 (D.D.C. 2003) (approving settlement where notice was mailed directly to third party payor class members and published in national publication).

### 2. Notice To Consumer Class Members.

Consumers will be notified of the proposed Settlement through a combination of summary notices appearing in major national publications, newspapers, internet banner ads, and on a website exclusively dedicated to information concerning the Settlement.

Individual notice is required where class members can be identified "through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Here, consumer class members cannot be identified through reasonable effort. Readily available mailing lists for prescription drug users do not exist because consumer class members' health information is protected against disclosure under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Public Law 104-91. *See* 45 C.F.R. Part 160, and Part 164 Subparts A and E.; *see also Larson v. AT & T Mobility*, *LLC*, 687

F.3d 109, 125 (3d Cit. 2012) ("reasonableness is a function of anticipated results, costs, and amount involved") (*quoting In re Nissan Motor Corp. Antitrust Litig*., 552 F.2d 1088, 1098-99 (5th Cir. 1977).

Where, as here, class members cannot be identified through reasonable efforts, the Third Circuit has approved publication notice as a suitable alternative. In *Warfarin*, a pharmaceutical antitrust class action similar to the instant matter, consumers who purchased the prescription drug Coumadin were notified of the proposed settlement by publication notice. Judge Robinson recognized that "individual notice was not reasonable or even possible to consumers," and that the "best notice practicable under the circumstances was given by publishing the summary notice in newspapers and magazines which were likely to be read by potential class members...." 212 F.R.D. at 25. On appeal, the Third Circuit rejected an objector's argument that individual notice should have been provided, noting that neither the plaintiffs nor the defendant had access to "the names and addresses of the multitude of people nationwide who purchased Coumadin because the identity of pharmaceutical purchasers is confidential information that cannot be disclosed...." *Warfarin Sodium*, 391 F.3d at 536-37..

In this case, the Notice Plan is superior to the plan approved by the Third Circuit in *Warfarin*. Plaintiffs' plan is more specifically targeted to class members, while at the same time, uses a broader variety of delivery vehicles, including the internet. Because the proposed notice program is the best notice practicable under the circumstances, it should be approved.

### 3. The Form and Content of the Notices Should Be Approved.

The Court also should approve the form and content of the proposed notices. These notices effectively communicate information about the Settlement and comport with the requirements of Rule 23.

For instance, the Detailed Notices of the Notice Plan include a plan English description of all of the elements required by Rule 23(c)(2)(B)(i)-(vii). Kinsella Decl., Exh. 4. They fairly, clearly and concisely describes in plain, easily understood language: the nature of the action and the Class's claims (*see* questions 1-2); the definition of the Settlement Class (*see* questions 4-6); that a Class member may object to the Settlement Agreement (*see* questions 17-18); that any Settlement Class member may appear in the action and be heard (*see* question 17); that the Court will exclude from the Class any member who requests exclusion and the time and manner of requesting exclusion (*see* questions 11-13); the binding effect of class judgment on members of the Class (*see* question 14).

The Detailed Notices also outline the terms of the proposed Settlement (*see* question 8); describe Class Counsel's request for attorneys' fees and reimbursement of all litigation expenses, and proposed incentive awards for each proposed Class Representative (*see* question 16); include the address for the website dedicated to the Settlement (*see* question 22); and provide information about the final approval hearing (*see* questions 19-21). This information more than satisfies the requirements of Rule 23. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d at 326-27.

**D. A Final Approval Hearing Should Be Scheduled**

Finally, the Court should schedule a final fairness hearing to decide whether to grant final approval of the Settlement, to address Class Counsel's request for attorneys' fees, expenses and incentive awards for Class Representatives, and to determine whether to dismiss this action with prejudice. *See* Fed. Jud. Ctr., *Manual for Complex Litig.*, Fourth, § 30.44 (2004); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 600 (3d Cir. 2010). To that end, Plaintiff's propose the following schedule (the "Final Approval Scheduling Plan"), which, pursuant to 28 U.S.C. §

1715(d), ensures that the appropriate state and federal officials are served with the notification required by the Class Action Fairness Act:

| Event | Date |
| --- | --- |
| Postcard Notice of Class Action Settlement To Be Mailed to TPPs and Posted On Internet | Within 30 Days of Preliminary Approval Order |
| Notice of Class Action Settlement To Be Published In National Media | To Be Complete 65 Days Before The Final Approval Hearing |
| Affidavit of Compliance With Notice Requirements | To Be Complete 30 Days Before The Final Approval Hearing |
| Receipt/Filing Deadline For Requests For Exclusion (or opt out) or Objections | 20 Days Before The Final Approval Hearing |
| Postmark/Filing Deadline For Filing Claims | 60 Days After Entry of Final Order and Judgment |
| Final Motion For Final Approval, Attorneys' Fees, Reimbursement of Expenses, And Incentive Awards To Be Filed By Class Counsel | 14 Days Before The Final Approval Hearing |
| Service/Filing Notice of Appearance at Final Approval Hearing | 30 Days Before The Final Approval Hearing |
| The Final Approval Hearing | No Sooner Than 20 Days After Opt-Out Deadline Or Later |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order: (1) conditionally certifying a class action with respect to the claims against Defendant pursuant to Rule 23 for the purposes of effectuating a class action settlement of the claims against Defendant; (2) preliminarily approving the Settlement; (3) directing notice to class members consistent with the Notice Plan; and (4) scheduling the Final Approval Scheduling Plan. A proposed order is attached as Exhibit 6 to the Motion.

Dated: December 14, 2012

By: <u>Marvin A. Miller</u>　　　　　By: <u>Michael M. Buchman</u>
Marvin A. Miller　　　　　　　　Michael M. Buchman
Lori A. Fanning　　　　　　　　600 Third Avenue
**MILLER LAW LLC**　　　　　　　New York, NY  10016
115 S. LaSalle St., Ste. 2910　　T: (212) 661-1100
Chicago, IL  60603
T: (312) 332-3400


Co-Lead Counsel For Indirect Purchaser Plaintiff