UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE FLONASE ANTITRUST LITIGATION | CIVIL ACTION |
| THIS DOCUMENT RELATES TO: | No. 08-3301 |
| Indirect Purchaser Actions | **Hon. Anita B. Brody** |

MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE
CLASS SETTLEMENT AGAINST LOUISIANA ATTORNEY GENERAL

I.       INTRODUCTION

Defendant GlaxoSmithKline LLC ("GSK") (formerly, and as captioned, SmithKline Beecham Corporation) submits this Memorandum in support of its motion to enforce the Indirect Purchaser Class Action Settlement Agreement against the Louisiana Attorney General, who has impermissibly filed a Flonase antitrust lawsuit against GSK that includes claims barred by the December 2012 Settlement Agreement.

The Louisiana Attorney General filed a lawsuit against GSK in state court in Louisiana on December 29, 2014 "with respect to purchases of and reimbursements for the prescription drug Flonase and its generic equivalent, fluticasone propionate." (Exhibit "A" at ¶ 1). The lawsuit is identical to the lawsuits filed in the *Flonase Antitrust Litigation* in this Court, as it alleges that GSK filed "sham" citizen petitions with the United States Food and Drug Administration (the "FDA") to delay FDA approval of a generic equivalent to Flonase manufactured by a competitor, Roxane Laboratories. Indeed, the Complaint filed by the Louisiana Attorney General is, quite literally, a verbatim "cut-and-paste" copy of the original Complaint filed by the Indirect Purchaser Plaintiffs in the *Flonase Antitrust Litigation* on July 14, 2008 (Dkt. 1). All of the substantive paragraphs of the Louisiana Complaint (¶¶ 12-86) were

copied word-for-word from the Indirect Purchasers' Complaint (¶¶ 5-80), and the Louisiana Complaint (¶ 72) covers the exact same time period as the Indirect Purchaser Complaint (¶ 65).

Louisiana's damages claims include claims covered by the release and covenant not to sue provisions of both the Indirect Purchaser Settlement Agreement (Exhibit "B" at ¶ 11(b)) (Dkt. 566) and this Court's June 19, 2013 Final Order and Judgment (Exhibit "C" at ¶ 20) (Dkt. 606). Louisiana is a member of the Indirect Purchaser Settlement Class, which expressly encompasses "State governments and their agencies and departments" "to the extent they purchased fluticasone propionate nasal spray (branded Flonase and/or its generic equivalents) for their employees or others covered by a government employee health plan." (Ex. "B" at ¶ 1; Ex. "C" at ¶ 7(2)). Louisiana did not opt-out of the Settlement Class, and thus is bound by the release and covenant not to sue provisions in the Settlement Agreement and Final Order and Judgment.

Although Louisiana's lawsuit is now pending in the Middle District of Louisiana after being removed by GSK to federal court (No. 15-55), this Court is the "exclusive" venue for this motion to enforce settlement and for Louisiana's lawsuit, given that it includes claims encompassed by the Settlement Agreement. The Settlement Agreement (¶ 21) and Final Order and Judgment (¶ 18) expressly provide that this Court retains "exclusive and continuing jurisdiction" over any suit or dispute arising out of or relating to the Settlement Agreement, the applicability or interpretation of the Settlement Agreement, and the "enforcement of this Final Order and Judgment." Also, both the Settlement Agreement (¶ 21) and the Final Order and Judgment (¶ 18) provide that each member of the Settlement Class "irrevocably submits" to the "exclusive and continuing jurisdiction" of this Court for any suit or dispute arising out of or relating to the Settlement Agreement, including disputes relating to the release provisions.

The Final Order and Judgment expressly provides that each member of the Settlement Class is "permanently enjoined" from commencing "any proceeding in any state or federal court" that alleged any claim released under the Settlement Agreement and the Final Order and Judgment. (Exhibit "C" at ¶ 21).

This Court has the inherent power and authority to enforce its Final Order and Judgment and to enjoin lawsuits by class members to the extent they include claims barred by the release and covenant not to sue provisions contained therein. *See, e.g., Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("[U]nder elementary principles of prior adjudication, a judgment in a properly entertained class action is binding on class members in any subsequent litigation"); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 367-8 (3d Cir. 2001) ("A district court has the power to enforce an ongoing order against relitigation so as to protect the integrity of a complex class settlement over which it retained jurisdiction."). This Court should exercise its authority to protect the integrity of the *Flonase Antitrust Litigation* Indirect Purchaser Settlement Class by enjoining Louisiana from further pursuit of claims that are barred by that settlement.[1]

## II. PROCEDURAL BACKGROUND

### A. The Indirect Purchaser Class Settlement

On June 19, 2013, after five years of hard-fought litigation, this Court approved the December 6, 2012 Settlement Agreement between GSK and the Indirect Purchaser

---

[1] Contemporaneously with the filing of this Motion, GSK is filing in the Middle District of Louisiana a motion to transfer Louisiana's suit to this Court pursuant to 28 U.S.C. § 1404. A copy of that filing is attached hereto as Exhibit "D." GSK is also providing a courtesy copy of the instant Motion to the presiding judge in the Middle District of Louisiana, the Honorable Brian Jackson.

3

Settlement Class. The Settlement Class covered the time period May 19, 2004 through March 31, 2009 and was defined as follows:

> All persons throughout the United States and its territories who purchased and/or paid for, in whole or in part, fluticasone propionate nasal spray, whether branded Flonase or its AB-rated generic equivalents, intended for the consumption of themselves, their family members and/or household members, and all Third Party Payor entities throughout the United States and its territories that purchased, paid for, administered and/or reimbursed for fluticasone propionate nasal spray, whether branded Flonase or its generic equivalents, intended for consumption by their members, employees, plan participants, beneficiaries or insureds.

(Ex. B at ¶ 1; Ex. C at ¶ 6).

Significantly, "State governments and their agencies and departments" are included in the Settlement Class "to the extent they purchased fluticasone propionate nasal spray (branded Flonase and/or its generic equivalents) for their employees or others covered by a government employee health plan." (Ex. "B" at ¶ 1; Ex. "C" at ¶ 7(2)).

The Settlement Agreement and Final Order and Judgment both have expansive release and covenant not to sue provisions:

> Upon the Settlement Agreement becoming effective in accordance with paragraph 5 herein, Defendant and its past, present and future parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, general or limited partners, employees, agents, attorneys, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing) (the "Released Party" or "Released Parties") are and shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, and liabilities of any nature whatsoever (whether such claims, demands, actions, suits, causes of action, damages or liabilities arise or are incurred before, during or after the date hereof), including costs, expenses, penalties and attorneys' fees known or unknown, suspected or unsuspected, in law or equity, that Plaintiffs or any member or members of the Settlement Class, whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can, shall or may

4

have, directly, indirectly, representatively, derivatively or in any other capacity, relating to any conduct, events or transactions, prior to the date hereof, alleged or which could have been alleged in the Actions, relating to fluticasone propionate nasal sprays (branded Flonase and/or its generic equivalents) (the "Released Claims"). Except for enforcing this Settlement Agreement, each member of the Settlement Class hereby covenants and agrees that he, she or it shall not, hereafter, seek to establish liability against any Released Party based, in whole or in part, on any of the Released Claims.

(Ex. "B" at ¶ 11(b); Ex. "C" at ¶ 20).

The Final Order and Judgment and Settlement Agreement provide that this Court retains "exclusive and continuing jurisdiction" over any lawsuits or disputes arising out of or relating to the Settlement Agreement and over "the enforcement of this Final Order and Judgment," and class members "irrevocably submit to the exclusive and continuing jurisdiction" of this Court for such lawsuits or disputes:

> 17. Any and all disputes arising out of or related to the Settlement, the Settlement Agreement, the Plan of Allocation, or claims administration, including attorneys' fees, must be brought by Defendant, Plaintiffs, each member of the Settlement Class, and/or any other person or entity, exclusively in this Court.
>
> 18. The Court reserves exclusive and continuing jurisdiction, without affecting in any way the finality of this Final Order and Judgment, over the Settlement, Settlement Agreement and the Settlement Fund, the Plan of Allocation, the administration, consummation and interpretation of the Settlement Agreement or Plan of Allocation, and the enforcement of this Final Order and Judgment. The Court also retains exclusive jurisdiction in order to resolve any disputes that may arise with respect to the Settlement Agreement, the Settlement, the Plan of Allocation, the Settlement Fund, or allocation of attorneys' fees and reimbursed expenses, to consider or approve administration costs and fees, and to consider or approve the amounts of distributions to members of the Settlement Class. In addition, without affecting the finality of this Final Order and Judgment, Defendant, Plaintiffs and each Settlement Class member hereby irrevocably submit to the exclusive and continuing jurisdiction of the United States District Court for the Eastern District of Pennsylvania, for any suit, action, proceeding or dispute arising out of or relating to this Settlement or the Settlement Agreement or the applicability or interpretation of

5

>the Settlement Agreement, or the Final Order and Judgment, including, without limitation any suit, action, proceeding or dispute relating to the Release provisions therein, except that this submission to the Court's jurisdiction shall not prohibit: (a) any Released Party from asserting in the forum in which a claim is brought that the Release included in the Settlement Agreement is a defense, in whole or in part, to such claim or (b) in the event that such a defense is asserted in that forum and this Court determines it cannot bar the claim, the determination of the merits of the defense in that forum.

(Ex. "C" at ¶¶ 17, 18; Ex. "B" at ¶ 21)

In addition, the Final Order and Judgment specifically enjoins members of the Indirect Purchaser Settlement Class from filing suit against GSK with respect to claims released under the Settlement Agreement:

>21.    Plaintiffs and all members of the Settlement Class, the successors and assigns of any of them, and anyone claiming through or on behalf of any of them, whether or not they execute and deliver a proof of claim, are hereby permanently enjoined from commencing, instituting, causing to be instituted, assisting in instituting or permitting to be instituted on his, her or its behalf, whether directly, derivatively, representatively or in any other capacity, any proceeding in any state or federal court, in or before any administrative agency, or any other proceeding or otherwise alleging or asserting against the Released Parties, individually or collectively, any of the Released Claims in this Final Order and Judgment.  The releases herein given by the Released Parties shall be and remain in effect as full and complete releases of the claims set forth in the Actions, notwithstanding the later discovery or existence of any such additional or different facts relative hereto or the later discovery of any such additional or different claims that would fall within the scope of the release provided in this Final Order and Judgment, as if such facts or claims had been known at the time of this release.

(Ex. "C" at ¶ 21)

        B.    <u>The Louisiana Lawsuit</u>

The Louisiana Attorney General filed a Flonase antitrust lawsuit against GSK in Louisiana state court on December 29, 2014. (Exhibit "A").  GSK timely removed the case to

6

the Middle District of Louisiana on February 4, 2015 on the basis of the *Grable* doctrine. *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). The parties have stipulated to defer GSK's response to the Complaint until after there is a ruling on Louisiana's pending motion to remand to state court. As stated in footnote 1, *supra*, GSK is also filing in the Middle District of Louisiana contemporaneously herewith a motion to transfer that action to this Court pursuant to 28 U.S.C. § 1404. (Ex. "D").

As noted above, all of the substantive allegations in Louisiana's Complaint (Ex. "A" at ¶¶ 12-86) were copied word-for-word from the original Indirect Purchaser Complaint in this Court. (Exhibit "E" at ¶¶ 5-80). Thus, there is no question that the factual predicate of the claims asserted by the Louisiana Attorney General is <u>identical</u> to the claims asserted and ultimately settled and released in the Indirect Purchaser Settlement Agreement. Also, the time period covered by the Louisiana Complaint, which is May 19, 2004 – February 22, 2006 (Ex. "A" at ¶ 72) is subsumed within the time period of the Settlement Class in the *Flonase Antitrust Litigation* (May 19, 2004- March 31, 2009). (Ex. B at ¶ 1).

The very first paragraph of the Louisiana Complaint alleges that "Plaintiff brings this action with respect to purchases of and reimbursements for the prescription drug Flonase and its generic equivalent, fluticasone propionate." (Ex. "A" at ¶ 1). *See also id.* at ¶ 7:

> Plaintiff bring this action in its proprietary and/or sovereign capacity, which may include state departments, bureaus, agencies, political subdivisions, and other instrumentalities as purchasers (either directly, indirectly, or as assignees) or as purchasers under medical or pharmaceutical reimbursement programs, of Flonase.

*Id.* at ¶ 73 ("GSK's unlawful actions denied Plaintiff the opportunity to purchase or reimburse for lower-priced AB-rated generic versions of Flonase, and thus forced Plaintiff to pay supra-competitive prices for fluticasone propionate"); *id.* at ¶¶ 92-93 (seeking damages from GSK for "purchases or reimbursements" made by Louisiana).

7

It bears emphasis that, consistent with the Class Action Fairness Act, GSK's attorneys sent a copy of the Indirect Purchaser Settlement Agreement to all state Attorneys General in December 2012, including the Louisiana Attorney General. (Exhibit "F"). Thus, the Louisiana Attorney General had full knowledge of the Agreement's terms, including the release and covenant not to sue, long before filing suit on December 29, 2014.

### III.  ARGUMENT

In approving the *Flonase Antitrust Litigation* Indirect Purchaser class settlement, this Court expressly retained "exclusive and continuing jurisdiction" over any suit or dispute arising out of or relating to the Settlement Agreement and over "the enforcement of this Final Order and Judgment." (Ex. B at ¶ 21; Ex. C at ¶ 18). Similar language was utilized in *In re Prudential Ins. Co. Sales Practices Litig.*, 314 F.3d 99, 105 (3d Cir. 2002) and *In re Diet Drugs*, 369 F.3d 293, 306 (3d Cir. 2004). Such an express reservation of jurisdiction to enforce a class settlement empowers this Court to grant relief against members of the Settlement Class who act in derogation of the release and covenant not to sue provisions. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1991) ("if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal – either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order…a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.").

Moreover, the Settlement Agreement (¶ 21) and Final Order and Judgment (¶ 18) each state that all class members "irrevocably submit" to the "exclusive and continuing jurisdiction" of this Court over any suit or dispute arising out of or relating to the Settlement Agreement and over "the enforcement of this Final Order and Judgment." After the expiration of

8

the opt-out period, all "class members [became] subject to the jurisdiction of the District Court." *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 230 (3d Cir. 2002).

The factual basis of the claims asserted by Louisiana is identical to that underlying the Indirect Purchaser class action. Thus, its claims are covered by the release and covenant not to sue provisions in the Settlement Agreement to the extent they encompass purchases of Flonase for its employees or others covered by a government employee health plan. In *McGowan Investors LP v. Keefe Bruyette & Woods, Inc.*, 540 F.Supp.2d 571 (E.D. Pa. 2008), this Court held that claims asserted by a putative class of former seat owners of the Philadelphia Stock Exchange relating to the demutualization of the Exchange were barred by a release in a prior Delaware Chancery Court class action. This Court stated:

> The permanent injunction in the Settlement Order entered by the Delaware Chancery Court in the *Ginsburg* Action bars McGowan's claims. An individual claim by a person who was a class member in a prior class action suit is barred by a settlement of the class action where the settlement includes a release applicable to his later individual action. *See In re Prudential Insurance Company of America Sales Practice Litigation*, 261 F.3d 355, 366 (3d Cir. 2001) ("It is now well settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action."). *See also TBK Partners, Ltd., v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982).
>
> \* \* \*
>
> Here, all of the McGowan's claims against KBW are based on demutualization. <u>Because the factual predicate underlying this action and the *Ginsburg* Action is the same, the release in the Settlement Order circumscribes the asserted claims.</u>

*Id.* at 576, 577 (emphasis added).

The Supreme Court has stated that "[t]here is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Bank of Richmond*, 467 U.S.

9

867, 874 (1984). *Accord In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 261 F.3d 355, 366 (3d Cir. 2001) ("It is now settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action.").

In words equally applicable here, the Third Circuit emphasized in both *Diet Drugs* and *Prudential* as follows:

> The settlement here represented a herculean effort to provide a fair and consistent framework for the resolution of millions of claims. The comprehensive procedures implemented for this purpose were integral to this effort. <u>Permitting continued litigation of these claims would "unsettle" what had been thought to be settled</u>, and would disrupt carefully constructed procedures for individual dispute resolution. <u>Allowing comprehensive settlements to be undermined in this way would undeniably deter similar settlements in the future</u>.

*Diet Drugs*, 369 F.3d at 306; *Prudential*, 314 F.3d at 105 (emphasis added).

Indeed, numerous courts in the Third Circuit have enjoined suits by class members which were released in a prior class settlement. *See, e.g, In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 367 (3d Cir. 2001) (upholding district court's injunction prohibiting litigation of claims released in class action settlement); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99 (3d Cir. 2002) (upholding injunction prohibiting litigation of issues relating to settlement in state court); *In re Am. Investors Life Ins. Co. Annuity Marketing & Sales Practices Litig.*, 715 F.Supp. 2d 610 (E.D. Pa. 2010) (enjoining, under both the "necessary in aid of its jurisdiction" and "to protect or effectuate its judgments" prongs of the Anti-Injunction Act, state court litigation in which plaintiff attempted to litigate claims released in MDL class action settlement.[2]

---

[2] The Anti-Injunction Act is not implicated here because Louisiana's lawsuit is in federal court.

10

In a recent decision, Judge Pratter granted motions to enforce a class action settlement against class members who had not opted out and subsequently sought to pursue lawsuits based on released claims. *In re: Imprelis Herbicide Marketing, Sales Practices and Products Liability Litig.*, 2014 U.S. Dist. LEXIS 169559 (E.D. Pa. Dec. 5, 2014). Judge Pratter made clear that permitting such claims would "undermine" the very purpose of settlements:

> Because the Stovalls are class members, the Court will enjoin them from proceeding in state court on their Imprelis claims for the same reasons other courts in this Circuit have enjoined proceedings in similar MDL actions – allowing the Stovalls and/or others to violate the Court's final settlement orders by bringing individual state suits asserting Imprelis claims would interfere with the Court's jurisdiction over the settlement and would encourage attempts to disturb the Court's final judgment. As the Third Circuit Court of Appeals has observed, allowing plaintiffs to essentially relitigate settled claims "<u>would seriously undermine the possibility for settling any large, multi-district class action</u>." *Prudential-Lowe*, 261 F.3d at 367.

*Id.* at *15. (emphasis added)

This Court's Final Order and Judgment specifically provided that each class member was "permanently enjoined" from commencing "any proceeding in any state or federal court" that alleged any claims released under the Settlement Agreement and Final Order and Judgment. (Ex. C at ¶ 21). Nevertheless, even though the Louisiana Attorney General had previously received a copy of the Settlement Agreement pursuant to CAFA, it brought this lawsuit anyway, including claims encompassed by the Settlement Agreement.

As in the many cases cited above, this Court should enforce the Settlement Agreement by entering an injunction preventing Louisiana from pursuing its claims to the extent they were released under the Indirect Purchaser Class Settlement Agreement.

## IV. CONCLUSION

For the reasons set forth above, GSK respectfully submits that the Court should enjoin the Louisiana Attorney General from further litigation of claims that were encompassed within the Settlement Agreement and Final Order and Judgment.

Respectfully submitted,

/s/ Stephen J. Kastenberg
Stephen J. Kastenberg
Burt M. Rublin
Jessica M. Anthony
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
(215) 665-8500

*Attorneys for Defendant*
*SmithKline Beecham Corp.*
*d/b/a GlaxoSmithKline*